## ADDIS *et al. v.* ADDIS *et al.*

*(Supreme Court, General Term, Third Department.  May 21, 1891.)*

**1. INSURANCE—PAYMENT OF LOSS.**
   Defendant, tenant by the curtesy, insured his premises against fire, stating his estate therein to be in fee. The premises were burned, and the insurance company voluntarily paid the insurance, which they might have avoided on the ground of defendant's misstatement of his title. *Held,* in an action by the remainder-men to recover a portion of the insurance money, that, defendant having had no valid claim against the company, plaintiffs could stand in no better position, and were entitled to no part of the insurance voluntarily paid defendant by the company.

**2. SAME—INSURABLE INTEREST—TENANT FOR LIFE.**
   A tenant for life may insure premises belonging to the estate for his own benefit, and, in case of a loss, the remainder-man will be entitled to no part of the insurance.

Appeal from circuit court, Ulster county.

Action by David Addis and others against Cornelius Low Addis and another. From a judgment for the plaintiffs, defendants appeal.

Argued before LEARNED, P. J., and LANDON and MAYHAM. JJ.

*R. E. Wilkinson,* for appellants.  *J. Newton Fiero,* for respondents.

LEARNED, P. J.  The plaintiffs and defendant are co-tenants in remainder of a house and lot, of which the defendant is also tenant for life by the curtesy. The defendant insured the house in his own name. It was burned down, and he received the insurance money. The plaintiffs now claim a portion of the money. It was adjudged that one-eighth be paid to defendant; that the residue be invested by the county treasurer for defendant's life; that after his death that residue be distributed among the plaintiffs. In the defendant's application for insurance he described the house as "his dwelling-house." In the proofs of loss he stated that the property belonged to him, and that no one else had any interest in it. The house was worth about $1,000. The defendant built it himself, and paid for it, and got the lumber from his father's lot. The defendant's wife, who owned the land, died in 1866. The insurance was for $800, which amount was paid to him. The insurance company demanded back the money, and commenced a suit to recover it. It would seem by the evidence that, through the incorrect statements of the defendant, (whether intentional or unintentional,) the policy was invalid, and that the company, if it had chosen, need not have paid. But we do not see that this circumstance gives the plaintiffs any rights. Indeed, if the payment was voluntary on the part of the company, it is difficult to understand how the plaintiffs can have any interest therein. According to the evidence, the defendant had no valid claim against the company. If he had no claim against the company, certainly the plaintiffs had none; and, if they had no claim against the company, we do not see what right they have to the money which the company voluntarily paid to the defendant. It has been held that a tenant in possession of a life-estate, who had bought an equitable estate of one of the remainder-men, could not purchase for his own benefit on a sale under a municipal assessment. Being in possession, he could buy up an adverse title, and oust his co-tenant. *Burhans* v. *Van Zandt,* 7 N. Y. 523. But that is a principle not in the least applicable to insurance. The owner may insure his interest in the property, and may do this for his own benefit. He is under no obligation to protect other owners against loss by fire. If he should insure their interests without express authority from them, he could not collect from them any part of the premium. The case of *Wyman* v. *Wyman,* 26 N. Y. 258, only decided that where the insured died, and subsequently a loss occurred, and the money had been paid by the company, the widow should have her dower therefrom, then the debts of the deceased should be paid, and the residue, if any, should go to the heirs. That merely decided

a question of distribution among persons all claiming to succeed to the rights of the insured. It was substantially a question of marshaling the assets of a deceased person. But these plaintiffs claim adversely to the insured, not under him. The case of *Peck* v. *Sherwood*, 56 N. Y. 615, does not support the plaintiffs' claim. The remainder-man, who was the executor, appears, according to the opinion, to have made or concurred in an insurance with the tenant for life. The only matter decided was that the remainder-man should be allowed in his account for a proportional part of the premium. Now, without an express covenant, the tenant for life is not liable to rebuild a house destroyed by fire without his fault. He is in no sense a trustee for the remainder-man. If not bound to rebuild, he certainly is not bound to insure for the benefit of the remainder-man. Both the tenant for life and the remainder-man have insurable interests, and each can insure for himself. Perry, Trusts, §§ 487, 553. If this defendant had neglected to insure, and the plaintiffs, on the contrary, had insured, he would have had no claim against them for the money, or for any part of it. The fact that he was in possession does not change the rights. *Harvey* v. *Cherry*, 12 Hun, 354, 76 N. Y. 441, and cases there cited. See 1 Phil. Ins. (3d Ed.) § 349. We do not see any ground upon which the plaintiffs have any claim whatever to this money. The judgment should be reversed, and a new trial granted, costs to abide the event, and the injunction against the bank should be dissolved. All concur.