John P. ROGGE, Plaintiff,

v.

MENARD COUNTY MUTUAL FIRE IN-
SURANCE COMPANY, Farmers and
Grange District Mutual Tornado Insur-
ance Company, and Elsie B. Rogge, Ex-
ecutor of the Last Will and Testament
of Andrew J. Stout, deceased, Defend-
ants.

Civ. A. No. 2697.

United States District Court
S. D. Illinois, S. D.

June 8, 1960.

Drach, Howarth & Terrell, Springfield,
Ill., for plaintiff.

Charles G. Briggle, Jr., Springfield,
Ill., Sam Blane, Petersburg, Ill., for de-
fendants.

POOS, District Judge.

John P. Rogge filed this suit here on
October 26, 1959, against Menard Coun-
ty Mutual Fire Insurance Company,
Farmers and Grange District Mutual
Tornado Insurance Company and Elsie
B. Rogge, as executor of the last will
and testament of Andrew J. Stout, de-
ceased, on a policy of fire and tornado
insurance issued to A. J. Stout on June

11, 1958, covering a policy period of five years to June 11, 1963, to recover for a fire loss that occurred on October 27, 1958. Likewise plaintiff, on the same day, filed a similar suit in the same cause of action in the Circuit Court of Menard County, Illinois, except that in this suit the executor of the estate joins him as plaintiff.

The complaint alleges that corporate defendants and Elsie B. Rogge, executor of the estate of Andrew J. Stout, deceased, are citizens and residents of Illinois, and that plaintiff is a resident and citizen of Houston, Texas, and that the amount involved exceeds, exclusive of interest and costs, the sum of $10,000; that jurisdiction is invoked because of diversity of citizenship of the parties hereto.

The further allegation is that on June 11, 1958, and prior thereto, plaintiff was the owner in fee simple subject to a life estate in Andrew J. Stout of certain property located in Section 16, Township 17 North, Range 7 West of the Third Principal Meridian, Menard County, Illinois, which property was improved with a two-story dwelling house and other out buildings; that on June 5, 1958, the deceased, acting on his behalf and as agent of plaintiff, applied to defendants for a policy of insurance, insuring Stout, as life tenant and plaintiff as remainderman, against loss of improvements by fire or windstorm, and said corporate defendants thereupon issued their policy of insurance and named A. J. Stout as the insured under said policy instead of naming A. J. Stout as life tenant and John P. Rogge as remainderman, as the persons insured under said policy as mutually agreed upon by the corporate defendants and A. J. Stout on his own behalf and as agent for plaintiff.

The further allegation is that on October 27, 1958, the dwelling house was destroyed by fire, smoke and explosion; that on said date Stout died of injuries sustained by him in said fire; that the fire loss was in excess of $25,000, the amount of the policy; that on and prior to date of loss plaintiff and A. J. Stout had an insurable interest in said property so destroyed by fire; that plaintiff and the personal representative of A. J. Stout, the executor of his estate, have performed all the conditions of said policy on their part to be performed and that no part of the policy has been paid, although demanded.

The prayer of the complaint here is:

(1) that said policy of insurance be reformed to name A. J. Stout and John P. Rogge as the insured persons under the aforesaid policy.

(2) that plaintiff have judgment in such amount as shall appear to be due him for his interest in said property under said policy.

The prayer of the complaint in the State Court is that the policy be reformed to include John P. Rogge as an insured, for judgment in favor of both, and that the Court divide the judgment between plaintiffs.

The policy is attached to the complaint as Exhibit "A". The policy provides:

"do insure A. J. Stout and legal representatives in the sum of $25,000.00 for loss by fire,"

and further states the facts as alleged in the complaint here and in the State Court.

The corporate defendants file a motion to dismiss on the ground that the same action is pending in the Circuit Court of Menard County, Illinois. They attach to the motion a certified copy of a complaint filed by plaintiff herein wherein he and Elsie B. Rogge as executor of the last will of Andrew Stout, deceased, join as plaintiffs against the corporate defendants. This complaint was filed on October 26, 1959, and was entitled "Elsie B. Rogge, Executor of the Last Will of Andrew Stout, deceased, and John P. Rogge, plaintiffs, vs. Menard County Mutual Fire Insurance Company and Farmers and Grange District Mutual Tornado Insurance Company, defendants, No. L. 59–20." The cause of action alleged claims on the same policy of insurance and is in effect the same cause of action as that claimed here.

The allegations of the motion are that plaintiff is:

(1) Seeking relief in the State Court,

(2) This action unnecessarily burdens this court and the corporate defendants,

(3) Causes the defendants unnecessary inconveniences,

(4) Is a repetitious suit,

(5) May cause corporate defendants with duplicate or conflicting determinations of this court and the state court,

(6) That this court, under the circumstances, is not in a position to do complete justice,

(7) That under the doctrine of forum non conveniens the corporate defendants may not be twice vexed with the same action in the different courts at the same time.

The court points out that the executor is not brought before this court with process, and has not entered her appearance, although she is named in the complaint as a defendant. This leaves the court absent a party who may have some interest in the policy declared upon. The policy as above pointed out runs to the decedent and his personal representative, the executor.

The grounds of the motion when analyzed can be decided on four general propositions: (1) it is improper to seek relief in a federal and state court, both having jurisdiction at the same time, (2) the possibility of two judgments against the corporate defendants from the respective courts, (3) hardship in parties under the doctrine of forum non conveniens, and (4) lack of diversity of citizenship when the party plaintiff and one of the defendants, when properly aligned, is a resident and there is no collision of interest between the non-resident plaintiff and resident defendant.

■ The plaintiff has the legal right to bring the cause of action in both courts. This doctrine is well settled. The doctrine is announced in 1 Am.Jur. p. 44, Sec. 40, as follows:

"The rule that the pendency of an action in one jurisdiction cannot be pleaded in abatement of a subsequent action in another jurisdiction finds application where separate suits are pending at the same time, one in a Federal court, and one in a State court; early cases which seemingly entertained the view that such actions could be pleaded in abatement (13) have long since been disregarded. It is now well established that the pendency of an action in personam in a state court cannot be pleaded in abatement of a subsequent suit brought in the Federal court having concurrent jurisdiction with the State court, although both suits are between the same parties, and for the same cause. (14) The converse of this rule is equally true as a general proposition. The pendency of a prior suit in the Federal court is not generally a bar to a suit in the State court by the same plaintiff against the same defendant and for the same cause of action, unless the action in the Federal court is one that has been removed from the State court."

1 Am.Jur. p. 44, Sec. 40, Abatement and Revival.

■ The doctrine of forum non conveniens is inapplicable here for the reason that the State court is located at Petersburg, Illinois, approximately 25 miles from Springfield, in which city is located the courthouse for this court. There is no necessity for witnesses to travel hundreds of miles at great expense, and there is no possibility that the cost and expense of litigation will consume any judgment. The case can be tried in either court at about the same expense. Springfield would be just as convenient as Petersburg. The practical aspect of the doctrine is discussed in Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, where the court said:

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the

court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant ·by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

An application of this reasoning to the facts of this case determine that this case should be retained here so that the matter can readily be disposed of.

■ The contention that corporate defendants might be confronted with two judgments, one in the State court and the other in this court, can readily be resolved. If the cause is tried to judgment in the State court, this court, on notice of the judgment, will, under the doctrine of res adjudicata, dismiss this case. Undoubtedly the State court would do the same. If, in the event the State court would proceed after judgment here, this court would have the power to enjoin the State court from acting. 1 Am. Jur., Abatement and Revival, Sec. 40, p. 45, Note 2.

Factually this is a suit against the corporate defendants, Menard County Mutual Fire Insurance Company, Farmers and Grange District Mutual Tornado Insurance Company, and Elsie B. Rogge, executor of the last will and testament of Andrew J. Stout, deceased, in personam to reform the policy of insurance and after reformation to enter judgment for the face amount, $25,000, in favor of plaintiff. The facts that would decree reformation are not alleged, except generally where in Paragraphs 3, 4 and 5 of the Complaint these allegations appear:

"3. That on June 5, 1958, and at all times hereinafter mentioned in this Complaint, plaintiff was the owner in fee simple, subject to a life estate in one, Andrew J. Stout, of property located in Section 16, Township 17 North, Range 7 West of the Third Principal Meridian, Menard County, Illinois, which said property was improved with a large

two-story dwelling house and other out buildings.

"4. That on June 5, 1958, Andrew J. Stout, acting on his behalf as an agent of the plaintiff, applied to the defendants, Menard County Mutual Fire Insurance Company and Farmers and Grange Mutual Tornado Insurance Company, for an insurance policy insuring Andrew J. Stout as a life tenant, and John P. Rogge as a remainderman, against loss or damage to the improvements above mentioned by fire or lightning, as a result of which and for a valuable consideration the said defendants executed and delivered to the said Andrew J. Stout their policy of insurance, No. M–782 (5972), a copy of which policy is attached hereto and made a part hereof as Exhibit A.

"5. That by the mutual mistake of said Andrew J. Stout, acting on behalf of himself and as agent for the plaintiff and the defendants, Menard County Mutual Fire Insurance Company and Farmers and Grange District Mutual Tornado Insurance Company, the policy issued as abovesaid named A. J. Stout, meaning Andrew J. Stout, as the insured under said policy instead of naming A. J. Stout as life tenant, and John P. Rogge as remainderman, as the persons insured under said policy, as was mutually agreed upon by Defendants, Menard County Mutual Tornado Insurance Company and Andrew J. Stout acting on his own behalf and as agent for the Plaintiff."

It appears that the decedent owned a life estate in the real estate on which the house, destroyed by fire, was located, and that plaintiff owned the remainder in fee; that on June 5, 1958, the decedent, acting on his own behalf and as an agent for plaintiff, applied to the corporate defendants for a policy of insurance insuring Andrew J. Stout as a life tenant and John P. Rogge as remainderman against loss or damage to improvements by fire or lightning, as a result of which and for a valuable consideration the corporate defendants executed and delivered to the said Andrew J. Stout the policy of fire insurance involved in this case; that by mutual mistake of said Andrew J. Stout, acting on behalf of himself and as agent for plaintiff, and the corporate defendants, the policy as issued named A. J. Stout, meaning Andrew J. Stout, as the insured under said policy, instead of naming A. J. Stout as life tenant and John P. Rogge as remainderman, as mutually agreed upon by corporate defendants and as agent for the plaintiff. These allegations are all matters that will take evidence to prove.

The allegation of Paragraph 7 is as follows:

"7. That Andrew J. Stout died on October 27, 1958, as a result of injuries sustained by him in said fire."

This allegation in plain language says that the fire started before Andrew J. Stout was injured; that thereafter Andrew J. Stout was injured in some way by the fire after it started, and as a result of the injuries, died. If this allegation be true and the court must take it on its face, the liability under the policy attached the very second that the fire started at a time when Andrew J. Stout was alive. This statement of the beginning of a fire liability is substantially supported in Allemania Ins. Co. v. Little, 20 Ill.App. 431, 435, and in Western Coal & Dock Co. v. Traders Ins. Co., 122 Ill.App. 138, 140, where in the latter case, the court stated:

"The policy provides that no suit or action shall be brought thereon 'unless commenced within 12 months next after the fire' and one question to be determined is whether the clause has reference to the time the fire broke out or the time it was extinguished. In Allemania Insurance Co. v. Little, 20 Ill.App. 431, the policy provided no suit should be maintained unless brought 'within 6 months after the fire had occurred.' The fire in that case be-

gan Aug. 23, and was extinguished Aug. 24. Suit was begun to recover on the policy February 24th, following, and it was held the limitation began to run from the date the fire began and the action was therefore barred.

"The validity of a contract between the parties limiting the time within which the action may be brought has been often sustained, and is not questioned here, and we are disposed to hold that the time within which suit must be brought should be reckoned from Sept. 11th, the date the fire broke out, and not from November 11th, the date of its extinguishment * * *."

"Where a fire had begun in a building before the expiration of the policy insuring the goods therein, and it was impossible to save it from injury, the loss occurred during the life of the policy, whether or not the fire was actually communicated to the merchandise within that time." 44 C.J.S. Insurance § 331, p. 1270, note 40 (citing cases).

Thus the liability attached in favor of Andrew J. Stout in his lifetime. Thus the cause of action, under Sec. 339 of the Probate Act of Illinois, S.H.A.S., Chapt. 3, Sec. 494, Sec. 339, Probate Act, I.R.S. 1959, Chapt. 3, Sec. 494, survived in favor of the executor of his estate and is not in plaintiff and the proceeds of the policy must be paid to the executor. Contract actions under the common law survived to the personal representatives; People ex rel. Powles v. Alexander Co., 310 Ill.App. 602, 35 N.E.2d 92, First National Bank of Danville v. Taylor, 329 Ill. App. 49, 67 N.E.2d 306; and the rule is announced in 46 C.J.S. Insurance § 1143, Note 42, as follows:

"A life tenant, remainderman, or residuary devisee, who insures his interest in his own right and at his own expense, is entitled to the proceeds of the insurance, and the holder of the other portion of the fee has no claim thereto."

While this authority cites no Illinois case, the majority rule favors this view. See Rendahl v. Hall, 160 Minn. 502, 200 N.W. 744, 940; Bell v. Barefield, 219 Ala. 319, 122 So. 318; Corder v. McDougall, 216 Cal. 773, 16 P.2d 740; Spalding v. Miller, 103 Ky. 405, 45 S.W. 462, 20 Ky. Law Rep. 131; Converse v. Boston Safe Deposit & Trust Co., 315 Mass. 544, 53 N.E.2d 841; Harrison v. Pepper, 166 Mass. 288, 44 N.E. 222, 33 L.R.A. 239; King v. King, 163 Miss. 584, 143 So. 422; Addis v. Addis, 60 Hun 581, 14 N.Y.S. 657; In re Gorman's Estate, 321 Pa. 292, 184 A. 86; Bennett v. Featherstone, 110 Tenn. 27, 71 S.W. 589; Clements v. Clements, 167 Va. 223, 188 S.E. 154; Thompson v. Gearheart, 137 Va. 427, 119 S.E. 67, 35 A.L.R. 36; Lynch v. Johnson, 196 Va. 516, 84 S.E.2d 419, 423. In the case of In re Gorman's Estate, supra, it was held that an insurer's option to rebuild does not entitle the remainderman to an interest in a cash settlement of the life tenant's policy. One case in Missouri holds that the remainderman is entitled to an interest in the proceeds of the policy, Fitterling v. Johnson County Mut. Fire Ins. Co., 232 Mo.App. 805, 112 S.W.2d 347, and another Missouri case holds that where there is no agreement that the life tenant shall keep the property insured and no provision to that effect in the instrument creating the life estate and no clause in the policy procured by the life tenant providing that payment shall be made to him as his interest may appear, the life tenant is entitled to the whole of the proceeds as against the remainderman, regardless of whether or not the insurance taken by the life tenant exceeds the value of the life estate in the property destroyed. Underwood v. Fortune, Mo.App., 9 S.W. 2d 845. "A life tenant has an insurable interest in the property to the full value thereof." 44 C.J.S. Insurance § 190, p. 891. Notes 65 and 66 for cases cited. However, under the allegations of the complaint, the deceased was the agent of plaintiff, and if this allegation be proved, there is authority to the effect that a remainderman, if he meets the burden of

proof, may have a cause of action on the policy announced in the same C.J.S. citation, as follows:

"The remainderman is entitled to an interest in the proceeds of a policy taken out by the life tenant for the full value of the property insured, where the policy by its terms covers the interest of both the remainderman and the life tenant, or, even though it was taken out in the name of the life tenant, where the life tenant is under obligation, by agreement or otherwise, to insure for the benefit of the remainderman, or intended the insurance to be for the benefit of both; and a life tenant who collects from insurer the full amount of the insurance has been held in such case to hold the part in excess of his interest as trustee for the remainderman, although it has also been held that, in the absence of an agreement to that effect, the proceeds are not substituted for the insured property."

Thus it can readily be seen that there is a legitimate dispute to be settled by litigation either in this court or in the state court between plaintiff and the defendant, executor, and the authorities above are cited for the purpose of aligning the parties plaintiff and defendant, executor, to inquire whether or not this state of facts meets the requirement of the collision of interest rule as laid down in City of Indianapolis et al. v. Chase National Bank et al., 314 U.S. 63, 62 S.Ct. 15, 16, 86 L.Ed. 47. The court said:

"As is true of many problems in the law, the answer is to be found not in legal learning but in the realities of the record. Though variously expressed in the decisions, the governing principles are clear. To sustain diversity jurisdiction there must exist an actual * * * substantial * * * controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side * * *. Diversity jurisdiction can-

not be conferred upon federal courts by the parties' own determination of who are plaintiffs and who are defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' * * * Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests' * * * exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit' * * * and the 'primary and controlling matter in dispute' * * * These familiar doctrines governing the alignment of the parties for purpose of determining diversity of citizenship have consistently guided the lower federal courts and this Court."

The actualities of this litigation, while it is the purpose of both the plaintiff and the executor defendant to make the corporate fire insurance defendant pay the face of the policy, show under the law as above announced that there is a collision of interest between plaintiff and the executor defendant. Accordingly the motion to dismiss is denied for the reasons herein stated on the diversity of citizenship feature, provided the plaintiff bring the defendant, executor, before the court by process.

The next question raised by the defendant Farmers and Grange Mutual Tornado Insurance Company is that it should be dismissed because there is no liability as against it for the fire loss. An inspection of the combined policy shows that one company insures against loss by fire and the other against loss by cyclone or windstorm. The Farmers and Grange Mutual Tornado Insurance Company, according to the policy, insures against tornado, cyclone and windstorm. The record shows a fire loss and not a windstorm loss. While both companies join in the execution of the policy, the policy clearly states,

"It is understood and agreed, now and forever, that the Fire Company and the Wind Company shall not, under any circumstances whatsoever, be liable for the losses of the other."

Coverage C provides for wind and hail insurance. Under the factual situation there can be no liability against the Wind Company. Accordingly the motion of Farmers and Grange District Mutual Tornado Insurance Company is allowed, and it is dismissed out of the case.