**D. H. WALDEN, Appellant,**

v.

**BROCE CONSTRUCTION COMPANY,**
a corporation, Appellee.

**No. 8195.**

United States Court of Appeals
Tenth Circuit.

March 8, 1966.

John B. Ogden, Oklahoma City, Okl., for appellant.

Clayton B. Pierce, Oklahoma City, Okl., for appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and LANGLEY, District Judge.

LANGLEY, District Judge.

This appeal is from an order of the lower court dismissing the action for lack of jurisdiction because there was no diversity of citizenship between the parties.

The appellant, D. H. Walden, a medical doctor, filed a negligence action in the Western District of Oklahoma against Broce Construction Company, appellee, claiming damages for personal injuries sustained in an automobile accident and alleging diversity of citizenship as grounds for federal court jurisdiction. In his complaint Dr. Walden alleged that the Broce Construction Company was an Oklahoma corporation, which the appellee admitted in its answer, and that he was a resident and citizen of Texas, which the appellee denied. The sufficiency of the amount in controversy was not challenged. Following a hearing to determine the issue of diversity, the District Court found that the appellant was an "actual citizen of Oklahoma at the time the action was filed and had never established bona fide citizenship in the state of Texas", and dismissed the action "because of lack of diversity of citizenship between the parties". It is the appellant's position here that the evidence introduced at the hearing does not support the finding and order.

Only one witness testified, the appellant himself. Dr. Walden stated that he established citizenship in Texas in October of 1961, and local residence in Jefferson County, Texas in June or July of 1962. He changed his citizenship in 1960, he said, from Oklahoma to California for six or seven months, and then from California to Texas. From his response to inquiry concerning acts tending to support or contradict this statement regarding his citizenship, it appears that prior to November 8, 1958, Dr. Walden had lived in Oklahoma for a number of years. On that date he was involved in an automobile accident in Creek County, Oklahoma. His home was in Tulsa, Oklahoma at the time, where he had established a private hospital corporation, the Walden-Page Memorial Hospital, Inc., which operated a hospital under the name Tulsa General Hospital. It is not entirely clear who was actively in charge of the hospital, but his wife was executive secretary of the corporation and Dr. Walden was furnished offices in and had use of its facilities, and lived with his family in an apartment supplied by the hospital. Also, he had the use of a cabin maintained by the hospital on the shore of a nearby lake. Some weeks or months after the accident—just how long cannot be ascertained from his testimony—Dr. Walden moved to a house in Bristow, in Creek County, Oklahoma, and later to a

trailer house in the same county but just over the line from Tulsa County. Whether his family accompanied him in these moves is not indicated, but while he was there he filed suit in the State Court in Creek County for damages growing out of the accident. Sometime after the suit was filed, he went to California with part of his family and remained there six or seven months. He then came back to Creek County to prepare for and participate in the trial of his case. After the trial, in May of 1960, he went again to California, this time, he says, changing his citizenship to that state. After another period of six or seven months in California he came back to Oklahoma, to Tulsa, apparently during the summmer of 1961, for the purpose of arranging for the lease of the hospital. It is not clear what arrangements were made, but after a few months, in October of 1961, he and Mrs. Walden went to Galena Park, Texas, near Houston, where Mrs. Walden had secured employment in a hospital. A few months later they returned to Tulsa, in June or July of 1962, at which time Mrs. Walden apparently took charge of the hospital and moved into the apartment furnished the Waldens by the hospital. Dr. Walden states, however, that he went back to Texas, to Beaumont, in Jefferson County, where he stayed with his son and his son's family and where he resided when this action was filed on January 30, 1963. After his wife returned to Tulsa and Dr. Walden went to live with his son, he made what he called occasional trips to Tulsa to visit his wife and their two children who were living with her and going to school. On these trips he stayed for periods of from two days to a week or so. And on these visits he practiced some medicine, treating patients at the hospital in Tulsa, and also spent sometime at the hospital's cabin on the lake. He claims, however, to have maintained his citizenship in Texas and his residence in Jefferson County, living on funds supplied by his wife. Sometime after suit was filed, in 1963, he moved with his son's family to another place in Beaumont, in Hardin County, which is where he says his residence was when the hearing was held.

As supporting documents, the appellant introduced poll tax receipts from Jefferson County, Texas, showing payment for himself and Mrs. Walden on January 19, 1963, eleven days before this suit was filed. He also introduced Texas fishing license for himself dated May 1, 1963 and January 7, 1964, a poll tax receipt for Mrs. Walden dated January 7, 1964, two Houston lodge membership cards dated December 8, 1962 and October 1, 1963, and an undated poll tax exemption certificate issued by Hardin County, Texas, after suit was filed. In this connection, we might point out here that the poll tax receipts issued to Dr. and Mrs. Walden on January 19, 1963, show them both to have resided in Jefferson County for a year, although Dr. Walden testified that they lived in Galena Park, which is in Harris County, Texas, until June or July of 1962, and that Mrs. Walden had lived in Tulsa since then. And both the poll tax receipt and the exemption certificate show Dr. Walden as a lifelong resident of Texas although he testified that he moved to Texas in 1961. One further factual item should perhaps be noted: Dr. Walden continued to use an Oklahoma driver's license and to drive an automobile furnished to him by the hospital. Upon these facts, and "after hearing and observing the plaintiff as a witness", the trial court concluded the appellant had not, despite his statement to the contrary, changed his citizenship from the state of Oklahoma at the time suit was filed.

■ We have heretofore held in Mid-Continent Pipe Line Company v. Whiteley, 10 Cir., 116 F.2d 871, that an allegation of diversity of citizenship alone, when challenged, is not enough; that where the evidence and the inferences and deductions fairly to be drawn from it present a conflict upon that question of fact, it is for the trial court, who heard and observed the witnesses, to decide what inferences and deductions are to be drawn. The same rule applies when the evidence is undisputed but conflict-

ing inferences or deductions from it are possible. In Hill v. Gregory, 241 F.2d 612, (7 Cir.), holding that under Rule 52 (a) of the Federal Rules of Civil Procedure it is for the trial judge to determine the propriety of the inferences and conclusions to be drawn from the undisputed facts, the court said, quoting from its prior decision in Central Ry. Signal Co. v. Longden, 7 Cir., 194 F.2d 310,

> "His is the primary function of finding the facts and choosing from amongst conflicting factual inferences those which he considers most reasonable. Even where there is no dispute about the facts, if different reasonable inferences may be fairly drawn from the evidence, we are forbidden to disturb the findings based on such inferences unless they are clearly erroneous."

 ▪ The evidence in this case is undisputed. It comes from one source only, the appellant, who testified that he was a citizen of Texas. But in our opinion conflicting inferences and deductions may fairly be drawn from the evidence upon the question of the place of his citizenship. Dr. Walden had no home in Texas except with his son's family; his own family lived in Oklahoma at the place which had been their permanent residence; he visited his family and practiced his profession in Oklahoma from time to time; he drove an automobile supplied by the hospital in Oklahoma, which he had established; he continued to use an Oklahoma driver's license; the documentary evidence offered at the hearing contains information inconsistent with his testimony; and from November 1958 on an air of impermanence pervades his movements away from Tulsa. From these facts, and giving due consideration to the opportunity to hear and observe the witness, we think the trial court could reasonably conclude that the permanence of residence—the intent to remain—in Texas, requisite to effect a change of domicile to that state, was lacking. As was said in Stine v. Moore, 213 F.2d 446 (5th Cir.).

"With respect to the diversity jurisdiction of the federal courts, citizenship has the same meaning as domicile. It imports permanent residence in a particular state with the intention of remaining, and is not dependent on birth. Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile; and citizenship is not necessarily lost by protracted absence from home, where the intention to return remains. Mere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says. 35 C.J.S. Federal Courts § 56."

 We cannot say that the finding of the lower court is clearly erroneous. The order dismissing the action for lack of jurisdiction should therefore be sustained.

Affirmed.