**SEABOARD FINANCE COMPANY,**
a corporation, Plaintiff,

v.

**George DAVIS, a/k/a George Dimitrovich, George S. Patterson, a/k/a George Patterson, a/k/a G. S. Patterson, Joan M. Patterson, a/k/a Joan Patterson, a/k/a J. M. Patterson, Defendants.**

**No. 67 C 885.**

United States District Court
N. D. Illinois, E. D.

Nov. 17, 1967.

508

Harry D. Plotnick, Chicago, Ill., for plaintiff.

Melvin A. Blum, David I. Hoffman and David A. Saunders, Chicago, Ill., for defendants.

## OPINION

WILL, District Judge.

The plaintiff, Seaboard Finance Company, brings this action against three defendants to recover damages allegedly resulting from the fraudulent procurement of a loan. Pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure, defendant, George Davis, has moved to dismiss on the ground of absence of federal jurisdiction over the subject matter. He asserts two grounds in support of his motion: (1) that there is not complete diversity of citizenship between all the opposing parties to the action, and (2) that the Court must apply an Illinois statute which precludes the suit.

### Diversity of Citizenship

The plaintiff seeks to invoke diversity jurisdiction under 28 U.S.C. § 1332, which provides that federal district courts shall have original jurisdiction of civil actions between citizens of different states involving an amount in excess' of $10,000. In Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), the Supreme Court interpreted a predecessor of this section to require that all the parties on one side of the action be citizens of different states than all the parties on the other side. This has become known as the "complete diversity" rule and has been consistently adhered to by the federal courts since its inception. See City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941); 1 Moore, Federal Practice ¶ 0.60 [8. −4] (2nd ed. 1964). Defendant Davis contends that such diversity is not here present.

He asserts that the plaintiff and defendants, George S. Patterson and Joan M. Patterson, are all citizens of the state of California. The plaintiff concedes that it is a citizen of California for purposes of federal jurisdiction, but it contends that the named defendants are not. Plaintiff asserts that these defendants have taken up residence in Tennessee and that they are "citizens" of that state.

The citizenship of an individual for purposes of diversity jurisdiction is considered to be that of his domicile.[1] A person's domicile is more than his present state of residence. An individual may indeed have more than one state of residence, but he is considered to have only one domicile. The domicile is the state in which a person resides with the intention of remaining.[2] Once a person's domicile is established, a new domicile is obtained only by a subsequent change of residence coupled with the intention of remaining indefinitely at the new residence. Gilbert v. David, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915);

---

1. Reynolds v. Adden, 136 U.S. 348, 10 S. Ct. 843, 34 L.Ed. 360 (1890); Janzen v. Goos, 302 F.2d 421, 424 (8th Cir. 1962); Mallon v. Lutz, 217 F.Supp. 454, 455 (E.D.Mich.1963).

2. Mitchell v. United States, 21 Wall. 350, 88 U.S. 350, 22 L.Ed. 584 (1874); Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954); Harding v. Standard Oil Co., 182 F. 421 (7th Cir. 1910). See, also, Wright, Federal Courts § 26 (1962).

Sun Printing & Publishing Ass'n v. Edwards, 194 U.S. 377, 24 S.Ct. 696, 48 L.Ed. 1027 (1904) ; Anderson v. Splint Coal Corp., 20 F.Supp. 233, 234 (E.D.Ky. 1937). Among the objective factors considered to evidence the intention of the individual are: his declarations, the exercise of political rights, the payment of personal taxes, his house of residence, and his place of business.[3]

■■ The parties have submitted affidavits in support of their respective contentions. It is obvious, however, that the inferences and deductions which can be drawn from these affidavits are inconclusive. At the time of execution of the affidavits, the Pattersons were residing in Nashville, Tennessee, after residing in Van Nuys, California for approximately twelve years. Mr. Patterson was then employed in Tennessee. Mrs. Patterson continues to own their former residence in California and Mr. Patterson will be required to pay income taxes in the state of California for the year 1967. Mr. Patterson is a registered voter in California and he states that he intends to exercise his political rights in forthcoming elections there. None of these things can be said either to establish conclusively defendants' domicile in Tennessee or to evidence with certainty their intention to return to California. We have been advised orally that the Pattersons have since moved from Tennessee to New Jersey. The protracted absence of a person from his domicile does not itself establish a new domicile. The person must also evidence an intent to remain indefinitely at the new residence. Walden v. Broce Const. Co., 357 F.2d 242, 245 (10th Cir. 1966) ; Stine v. Moore, 213 F. 2d 446, 448 (5th Cir. 1956). On the other hand, a change of residence is often considered prima facie evidence of a change of domicile,[4] and unless the person can show an intention to return to his former residence at a relatively definite future time, may be sufficient to ascribe a change of domicile. See Collins v. City of Ashland, 112 F. 175, 177–179 (E.D.Ky. 1901).

In his affidavit, Mr. Patterson refers to his employment in Tennessee as "temporary duties" and states that it is his intention to return to California at the completion of those duties. His affidavit does not disclose the expected duration of his duties in Tennessee or when he might reasonably be expected to return to California. His employment may be of definite or indefinite tenure and his resulting residence in Tennessee may be for a definite or indefinite period. Consequently, it would be presumptuous to render a decision on the question of the defendants' domicile at this time. This determination should properly await a hearing at which further inquiry can be made into the prospective duration of Mr. Patterson's employment in Tennessee and other factors which might conclusively evidence his intention.

■■ The defendant contends that, even assuming the Pattersons' citizenship to have changed, the suit should be dismissed because diversity of citizenship did not exist at the time of the commencement of the action. It is well settled that diversity of citizenship is determined as of the date of commencement of the action. Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7, 11 (8th Cir. 1965) ; McNello v. John B. Kelly, Inc., 283 F.2d 96, 98 (3rd Cir. 1960) ; Factor v. Pennington Press, Inc., 230 F.Supp. 906, 909 (N.D.Ill.1963). If there is no diversity at that time, it cannot be created by a subsequent change of domicile by one of the parties. Lyons v. Weltmer, 174 F.2d 473 (4th Cir.) cert. denied, 338 U.S. 850, 70 S.Ct. 93, 94 L.Ed. 520 (1949) ; Hagen v. Payne, 222 F.Supp. 548 (W.D.Ark.1963) ; E. K. Carey Drilling Co. v. Murphy, 113 F.Supp. 226 (D. Colo.1953). The court must dismiss, although the plaintiff may be able to reinstitute the suit.

3. Wright, Federal Courts § 26 (1962).

4. Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1956) ; Tudor v. Leslie, 35 F.Supp. 969, 970 (D.Mass.1940) ; Collins v. City of Ashland, 112 F. 175, 177 (E.D.Ky. 1901).

This suit was filed on May 25, 1967. The affidavit of defendant, George Patterson, states that he resided in California until June 1, 1967 and that Joan Patterson resided in California until July 4, 1967. However, the affidavit submitted on behalf of the plaintiff states that both George and Joan Patterson had ceased to reside in California on or about the date of May 25, 1967. It is clear, therefore, that the defendants' presence in California on the date of the commencement of the action is in dispute. This dispute involves a question of fact which cannot be properly resolved without a hearing at which relevant evidence can be heard and weighed.

### Prior Pending Action

The instant suit is the second suit brought. by the plaintiff against these defendants arising out of the same transaction. Prior to instituting the instant suit, the plaintiff commenced an action in the Superior Court of the State of California for the County of Los Angeles against these same defendants seeking recovery on the same promissory note that is involved in this suit. All three defendants have appeared and answered in the California action and that case is now pending.

This type of multiple litigation has been described as "repetitive litigation." [5] Traditionally, a repetitive suit has not been subject to dismissal, but it sometimes has been subject to abatement. Under the common law of England, the pendency of an action in a court of general jurisdiction between the same parties was grounds for a plea of abatement in a second suit brought on the same cause of action. A different rule, however, has evolved in the United States, and a plea of abatement has generally been held good only when made in a repetitive suit brought in the same jurisdiction in which the prior action is pending. See Vestal, Repetitive Litigation, 45 Iowa L.Rev. 525, 528–37 (1960).

This limitation has had ramifications for the federal courts. It has traditionally meant that only repetitive suits filed in different federal courts were subject to abatement.[6] Where the plaintiff brings in personam actions in both a state and a federal court, it has consistently been held that the actions, even though repetitive, may proceed concurrently assuming both courts have jurisdiction.[7] The defendant is not entitled to abatement even if the repetitive suits have been commenced in a state and Federal court of the same state. Although this result may lead to conflict between Federal and state courts, it has been justified on the basis of the concurrent jurisdiction. It should be recognized, however, that while the defendant is not entitled to abatement as a matter of right in such situations, the federal courts apparently have the power to grant abatement as a matter of discretion.[8]

The defendant Davis here moves to dismiss on the grounds that Section 48 (1) (c) of the Illinois Civil Practice Act

---

5. See Vestal, Repetitive Litigation, 45 Iowa L.Rev. 525 (1960). The term refers to the situation where a plaintiff starts a number of different law suits against the same defendant arising from the same group of operative facts. It may be distinguished from "reactive litigation" which refers to the situation where the defendant in one action starts a suit against the original plaintiff basing his suit on the same general facts which gave rise to the original suit. See Vestal, Reactive Litigation, 47 Iowa L.Rev. 11 (1961).

6. Ray v. Hasley, 214 F.2d 366 (5th Cir. 1954); Redditt v. Hale, 184 F.2d 443 (8th Cir. 1950); Rogge v. Menard County Mutual Fire Ins. Co., 184 F.Supp. 289 (S.D.Ill.1960); Smith v. Columbia County, Oregon, 166 F.Supp. 140 (D.Ore. 1958).

7. 1A Moore, Federal Practice ¶ 0.221 (2nd ed. 1964).

8. See Maryland Cas. Co. v. Boyle Construction Co., 123 F.2d 558 (4th Cir. 1941); Aetna Cas. & Surety Co. v. Quarles, 92 F.2d 321 (4th Cir. 1937); Allstate Insurance Co. v. Philip Leasing Co., 214 F.Supp. 273 (W.D.S.D.1963). See, also, Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183–184, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (dictum).

is applicable to the instant suit. Section 48(1) (c) provides as a ground for dismissal of an action commenced in an Illinois court: "That there is another action pending between the same parties for the same cause." Ill.Rev.Stat. ch. 110, § 48(1) (c) (Smith-Hurd, 1956).

Two observations should be made initially. First, the defendant contends that Section 48(1) (c) is not merely applicable on the basis of comity between the federal and state systems, but contends that its application is required by the policy of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, the defendant's motion presents the question of the applicability of this state statute in a diversity suit in a federal court of Illinois. Second, the defendant contends that the Court is required to dismiss the suit, rather than merely to abate the action. This obviously calls for a result which is contrary to the current federal practice. Whether such a result would be proper, depends (1) on the applicability of the state statute in the federal courts and (2) the construction given the statute by the courts of Illinois.

It should also be noted that the defendant has raised this matter on a motion to dismiss predicated on grounds of lack of jurisdiction over the subject matter. F.R.Civ.Proc. 12(b) (1). Although it would seem proper to consider the matter on a motion to dismiss, it is clear that this does not involve a question of jurisdiction. Actually, it involves a question of the applicability of a state statute of preclusion, analogous in many respects to a state statute of limitations.

### The Applicability of Section 48(1) (c) to a Federal Court

The defendant's motion poses the problem of what law is to be applied whenever a federal court exercises jurisdiction over a non-federal claim. The determinative source of law governing this question is the Rule of Decisions Act, 28 U.S.C. § 1652, which was originally enacted in 1789.[9] The Act was first given a definitive construction by the Supreme Court in the case of Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842). The Court there drew a distinction between matters of a local nature, such as real property, and matters of a general nature, such as commercial transactions. Id. at 18–19. It held that the federal courts were free to develop and apply their own jurisprudence in matters of a general commercial nature. In so doing, the Court construed the Act to require federal courts to apply state law only in those cases involving matters of local concern. This remained the settled interpretation of the Act until the decision of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, in 1938.

In *Erie,* the Supreme Court specifically overruled Swift v. Tyson. It found that the interpretation placed on the Rule of Decision Act in Swift v. Tyson was "erroneous"[10] and declared,

> Except in matters governed by the Federal Constitution or Acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts. Id. at 78, 58 S.Ct. at 822.

The langauge of the *Erie* opinion was broad. It suggested that

9. The Act provides:

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652 (1965).

10. 304 U.S. at 72, 58 S.Ct. 817.

the application of state law was not only required by the Act, but that conformity to state law was also constitutionally required. See 304 U.S. at 77–78, 79–80, 58 S.Ct. 817. The *Erie* decision, therefore, may be interpreted to stand for two propositions: (1) that the Rule of Decision Act requires application of state substantive law where a non-federal claim is involved, and (2) that the application of state substantive law by the federal courts in cases like *Erie* is constitutionally required. See Wright, Federal Courts § 56 (1962). The validity of the latter proposition is uncertain today. It has been hotly debated by the commentators ever since the *Erie* case [11] and in subsequent decisions the Supreme Court has seldom mentioned it, much less given it an endorsement.[12] Nevertheless, the decision has given rise to what may be loosely referred to as the "Erie Doctrine" —federal courts are required to apply the constitutional, statutory, and common law of the state in which they sit whenever faced with a non-federal question of law.

The *Erie* decision did not, however, clearly delineate the area falling under the doctrine. The opinion only indicated that the "substantive rule" of state law must be applied. Implicit in the *Erie* decision, therefore, was the idea that a federal court need only adopt a mechanical approach to the question. The court had only to determine what state rules were substantive and to apply them. Three years after Erie, in the case of Sibbach v. Wilson & Co., Inc., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479 (1941), the Court held that a federal court might allow a physical examination under the Federal Rule of Civil Procedure although the courts of the state in which the federal court was sitting did not allow such an examination. The petitioner specifically argued that the matter involved her substantive rights under state law.[13] The Court, however, found that the Rule was procedural, stating, "The test must be whether a rule really regulates procedure * * *." [14] Thus, the Court seemed to endorse a procedural-substantive dichotomy, that a federal court must apply the substantive laws of a state, but was free to apply its own procedural rules.

In 1945, the Court issued a more refined statement of the breadth of the Erie doctrine in the case of Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The issue involved was whether a federal court was required to apply a state statute of limitations which barred the action. The Court held the state statute applicable. It declared that in a diversity case a federal court is "only another court of the State" and that a federal court "cannot afford recovery if the right to recovery is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State." Id. at 108, 65 S.Ct. at 1469. The Court further stated,

> It is * * * immaterial whether statutes of limitation are characterized either as "substantive" or "procedural" in State court opinions in any use of those terms unrelated to the specific issue before us. * * * In essence, the intent of * * * [Erie] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should

---

11. Wright, Federal Courts § 56 (1962). See, e. g., Clark, State Law in the Federal Courts: The Brooding Omnipresence of Erie v. Tompkins, 55 Yale L.J. 267 (1946); Mr. Justice Frankfurter, the Supreme Court, and the Erie Doctrine in Diversity Cases, 67 Yale L.J. 187 (1957); McCormick & Hewins, The Collapse of "General" Law in the Federal Courts, 33 Ill.L.Rev. 126 (1938). Cf. Hill, The Erie Doctrine and the Constitution, 53 Nw.U.L.Rev. 427 (1958).

12. The Court has only referred to the Constitution in two subsequent cases dealing with the problem. Hanna v. Plumer, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1964); Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 202, 76 S.Ct. 273, 100 L.Ed. 199 (1950).

13. 312 U.S. at 3, 61 S.Ct. 422.

14. Id. at 14, 61 S.Ct. at 426.

be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. Id. at 109, 65 S.Ct. at 1470.

It appeared from this language that the Court had rejected the procedural-substantive dichotomy and in its place had adopted an "outcome-determinative" test.[15] If the state law or rule substantially affected the outcome of the litigation, the federal court was required to conform to the law of the forum.

This test represented a "one-dimensional view" of the Erie doctrine. Matters which in a traditional sense might be viewed as procedural, as well as substantive matters were to be governed by a single factor: whether they affected the outcome of the litigation.[16] For over a decade this was the accepted approach to the problem, and, with a few exceptions, the result was usually conformity to state law.

In 1958, the Supreme Court abandoned this single factor approach. In Byrd v. Blue Ridge Elec. Coop., Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Court was called upon to determine if the right to a jury trial was within the ambit of the Erie doctrine. The defendant in a personal injury action asserted that the plaintiff was its employee under the applicable state workman's compensation act, and, consequently, it was immune from suit since that act provided the plaintiff's sole remedy. A state court had held that the question of employment was to be determined by a judge. Nevertheless, the Court held that the issue was to be decided by a jury. It stated,

> It may well be that in the instant personal-injury case the outcome would be substantially affected by whether the issue of immunity is decided by a judge or a jury. Therefore, were "outcome" the only consideration, a strong case might appear for saying that the fed-

eral court should follow the state practice.

> But there are affirmative countervailing considerations at work here. The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury. * * * The policy of uniform enforcement of state-created rights and obligations, * * * cannot in every case exact compliance with a state rule— not bound up with rights and obligations—which disrupts the federal system of allocating functions between judge and jury. * * * Thus the inquiry here is whether the federal policy favoring jury decisions of disputed fact questions should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court. Id. at 537–538, 78 S.Ct. at 900.

Although in subsequent language the Court expressed doubt as to whether the difference between a judge or a jury determination might lead to a different outcome, it clearly indicated in *Byrd* that, regardless of the outcome, federal courts are permitted to examine countervailing considerations of federal interest in determining the applicability of state law.

The *Byrd* case suggests a multiple factor approach to the *Erie* problem whereby countervailing federal considerations are balanced against the goal of conformity to state law.[17] A number of Courts of Appeal have recognized such an approach to the question in subsequent cases. See e. g., Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508, 513 (2nd Cir. 1960); Monarch Ins. Co. of Ohio v. Spach, 281 F.2d 401, 407–408 (5th Cir. 1960); Odekirk v. Sears Roebuck & Co.,

---

15. See Wright, Federal Court § 55 (1962).

16. Vestal, Erie R. R. Co. v. Tompkins: A Projection, 48 Iowa L.Rev. 248, 259 (1963).

17. Vestal, supra, note 16 at 268.

274 F.2d 441, 445 (7th Cir.), cert. denied, 362 U.S. 974, 80 S.Ct. 1060, 4 L.Ed.2d 1011 (1960).

Implicit in the balancing approach used by the courts in post-*Byrd* cases has been the assumption that a countervailing federal consideration was not necessarily to be regarded as an absolute which conclusively determined the law to be applied. Instead, such considerations have been regarded merely as an additional factor to be examined in a sort of weighing process. In 1964, however, the Supreme Court seemed to reject this approach whenever a conflict arose between state law and the Federal Rules. In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Court ruled that in the event of such a conflict, the Rules would prevail over state law. The Court held that the Rules were to be judged in accordance with the Rules Enabling Act [18] as to whether they were actually procedural, rather than in accordance with the Erie doctrine. Although the Court specifically declared that the Federal Rules were not within the scope of the Erie doctrine, it is clear that the Court did not suggest that other federal concepts and considerations were to be regarded as equally absolute or outside its scope. On the contrary, the Court indicated that the congressional mandate embodied in the Rule Enabling Act posed a peculiar federal consideration not normally involved in an *Erie* situation. The underlying reasoning of the Court was that this specific expression of congressional intent required that the Rules prevail over conflicting state law. Id. at 471, 85 S.Ct. 1136. This reasoning is not inconsistent with the balancing approach suggested in the *Byrd* case and adopted by lower federal courts prior to the *Hanna* decision.

The *Hanna* decision is also significant because of the view of the Erie doctrine which the Court articulated. The Court stated,

> The *Erie* rule is rooted in part in a realization that it would be unfair for

the character or result of a litigation materially to differ because the suit had been brought in a federal court. * * * The decision was also in part a reaction to the practice of "forum-shopping" which had grown up in response to the rule of Swift v. Tyson. * * * That the *York* test was an attempt to effectuate these policies is demonstrated by the fact that the opinion framed the inquiry in terms of "substantial" variations between state and federal litigation. * * * The "outcome-determination" test therefore cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws. Id. at 467–468, 85 S.Ct. at 1142.

The Court, therefore, indicated that a federal court is under a duty to consider not only whether a variance exists between federal and state practice when called upon to consider the applicability of the Erie doctrine, but it is also under a duty to consider whether such a variance leads to forum shopping by the litigants.

To summarize, *Erie* and its progeny normally require a federal court to apply the law of the forum state. In determining the applicability of the state law, a federal court is required to consider three factors: (1) whether the variance between the state and local rule is such that it will affect the outcome of the litigation; (2) whether the variance is of a nature that it would encourage forum shopping; and (3) whether there is some countervailing federal consideration which would justify the variance. Where a substantial variance exists, the court must balance the first two factors against the third. Only if the countervailing considerations outweigh the possibilities of divergent administration of the laws and forum shopping, should the federal rule be applied.

---

18. 28 U.S.C. § 2072 (1965).

■ In the instant case, there is a substantial variance between the practice in the Illinois courts and the current practice in the federal courts. Section 48(1)(c) of the Illinois Civil Practice Act bars repetitive suits by litigants while it is the general practice of the Federal courts to allow such actions to proceed concurrently subject only to the possibility of abatement of the second suit under certain circumstances. It is clear, therefore, that there is a material difference in result between the two systems of courts. This variance is also of such a nature as to encourage forum shopping. It is obvious that litigants would be encouraged to file repetitive suits in the federal courts rather than in the state courts of Illinois.

■ This variance might be justified by the principle of concurrent jurisdiction and the considerations embodied in this principle, but the strength of these considerations is doubtful. The traditional justification for diversity jurisdiction is the possibility that state courts would be prejudiced against litigants from outside the state. See 1 Moore, Federal Practice ¶ 0.71 [3] (2 ed. 1969). The principal reason federal courts exercise concurrent jurisdiction over claims arising under state law, therefore, is to prevent the possibility of abuse of out-of-state litigants. This justification for a federal forum, however, disappears where a litigant, as in the instant case, is barred from suit in the state court in the first place. Diversity jurisdiction was not intended to make "diversity defendants, who might be either in-state or out-of-staters, more readily suable in the federal court than they would be in the state court." Arrowsmith v. United Press International, 320 F.2d 219, 227, 6 A.L.R.3d 1072 (2d Cir. 1963). Moreover, on two occasions, the Supreme Court has specifically held that the policy of Erie precludes the maintenance of a diversity action in a federal court where the forum state has "closed its doors" to the relief sought. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); Angel v. Bullinton, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Although both decisions were prior to the introduction of the countervailing considerations concept, they are indicative of the relative strength of the federal policy involved.

It would appear, therefore, that the only instance in which this court might properly deviate from the Illinois statute precluding repetitive suits would be where the court's jurisdiction in the first suit is uncertain. Under such circumstances, it might be necessary to exercise federal jurisdiction in order to provide the plaintiff a forum. However, such a situation is not involved in the instant suit. The defendants have submitted to the jurisdiction of the California Court and that court is evidently competent to render a judgment.

The plaintiff contends that the case of Rogge v. Menard County Mutual Fire Insurance Co., 184 F.Supp. 289 (S.D.Ill. 1960), is controlling. In the *Rogge* case, a suit was brought in the federal court to recover for a fire loss, and the defendants filed a motion to dismiss on the ground that the same action was pending in a state court of Illinois. The Court held that both actions could proceed concurrently. Apparently, however, the parties did not raise and the court did not consider the applicability of Section 48(1)(c) but limited its consideration to common law abatement.

The plaintiff also contends that Section 48(1)(c) of the Illinois Civil Practice Act is a codification of the common law plea of abatement. The plaintiff argues that abatement is a matter which has traditionally been considered one of procedure, involving judicial administration, and, therefore, the statute is outside the scope of the Erie doctrine.

This argument is fallacious for two reasons. First, the statute is clearly considerably broader than common law abatement. It specifically provides for dismissal of the suit, and the Illinois courts have interpreted this section to preclude repetitive suits rather than merely abatement of them. Skolnick v. Martin, 32 Ill.2d 55, 203 N.E.2d 428

(1964). Second, the plaintiff's argument invites the Court to apply the substantive-procedural dichotomy. This dichotomy was specifically rejected by the Supreme Court in Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) and the subsequent cases. As outlined above, the Erie doctrine requires the consideration of a number of factors. A consideration of these factors leads to the conclusion that Section 48(1) (c) must be applied in the instant case.

### The Construction of Section 48(1) (c)

Prior to the enactment of Section 48 (1) (c) of the Illinois Civil Practice Act, the Illinois courts recognized the general rule that where a party began two suits on the same cause of action against the same defendant within the same jurisdiction, the pendency of the first action was a ground for abatement of the second. See Illinois Life Insurance Co. v. Prentiss, 277 Ill. 383, 115 N.E. 554 (1917); Gage v. City of Chicago, 216 Ill. 107, 74 N.E. 726 (1905). Section 48 (1) (c) was originally interpreted to change this rule. In F. & F. Laboratories v. Chocolate Spraying Co., 6 Ill.App.2d 299, 127 N.E.2d 682 (1st Dist. 1955), the Appellate Court for the First District of Illinois was faced with a suit which was identical to a prior pending suit commenced in a federal district court in Illinois. The Court held that Section 48(1) (c) required dismissal of the action in the state court.

Nine years later, however, the same Appellate Court reversed its position. In Skolnick v. Martin, 47 Ill.App.2d 167, 197 N.E.2d 739 (1st Dist. 1964), it was faced with the same situation as in the earlier case. The Court held that Section 48(1) (c) simply allowed the matter of abatement to be raised by a motion to dismiss rather than by plea. On appeal to the Supreme Court of Illinois, the judgment of the Appellate Court was reversed and the order of the trial court dismissing the action was affirmed. Skolnick v. Martin, 32 Ill.2d 55, 60, 203 N.E.2d 428, 431 (1964). The Court stated,

When we consider the purpose for which the Civil Practice Act was enacted, and look to the simple and unambiguous language by which the legislature expressed itself, it is our opinion that the section was intended to grant a right to dismiss irrespective of the jurisdiction in which the other action was pending. The legislature has apparently agreed with the interpretation adopted in the F & F Laboratories case, for it has not amended section 48(1) (c).

The statute here authorizes dismissal where another action is pending without distinguishing between actions pending in another jurisdiction. Had it intended to restrict the authority to dismiss to situations where the other cause of action was pending in our own jurisdiction, it would have been a simple matter to do so. Id. at 49, 203 N.E.2d at 430–431.

It is obvious, therefore, that Section 48(1) (c) is not merely a codification of the common law doctrine of abatement as the plaintiff contends. The Supreme Court of Illinois has construed it to provide for dismissal of a repetitive suit regardless of the jurisdiction in which the first suit is pending. This is the construction which we must apply.

The plaintiff also contends that Section 48(1) (c) is not applicable because the California suit and the instant suit are not predicated upon the same cause of action. The California action is based upon the promissory note executed by the defendants. The action in this suit is based upon certain fraudulent acts allegedly committed by the defendants in connection with the loan on which they executed that note. The plaintiff submits that the issues, burden of proof, and the relief sought materially differ between the two actions.

The Supreme Court of Illinois was confronted with this issue in *Skolnick*. The Court noted,

The section [section 48(1) (c)] refers to "the same cause," not to the same "cause of action," and it has been held

that actions are "for the same cause," when relief is requested on substantially the same state of facts. * * * Measured by this test, the two actions here were "for the same cause." And in any case, we have held that identity of cause of action depends upon *identity of transaction or occurrence*. * * 32 Ill.2d at 55, 203 N.E.2d at 429. (Italics supplied)

Subsequently, the Appellate Court for the Fourth District of Illinois was confronted with the problem in Sidwell v. Sidwell, 75 Ill.App.2d 133, 220 N.E.2d 479 (4th Dist. 1966). Prior to instituting an action for separate maintenance, the plaintiff had commenced a divorce action in a different county. The trial court had dismissed the separate maintenance action on the basis of section 48(1) (c). Relying on the above language from the *Skolnick* case, the Appellate Court affirmed the trial court, concluding,

> [A]n action for divorce is a separate action from one for separate maintenance, but they are for the same cause and the relief requested relates to substantially the same state of facts. Id. at 143, 220 N.E.2d at 484.

These cases indicate that the applicability of the section in question is not dependent upon an identity of relief or legal theory. Instead, it depends upon whether the actions arise out of the same "transaction or occurrence." The suits involved in the instant case arose out of a single transaction—a single loan. Consequently, it would seem that Section 48 (1) (c) is applicable in the instant suit.

### Nature of the Bar

Section 48(1) (c) does not prevent the courts of Illinois from exercising jurisdiction over the cause, if the repetitive nature of the suit is not raised by the defendant.[19] In this sense, the statute provides a bar to the action or an affirm-

ative defense similar to res judicata or the statute of limitations rather than a jurisdictional limitation.[20] Accordingly, it must be affirmatively raised by motion.[21]

For the reasons stated above, the plaintiff is precluded from prosecuting the instant suit in this court. Defendant's motion to dismiss is granted. An appropriate order will be entered.

---

19. Section 48(1) (c) provides that a prior pending action between the same parties for the same cause shall be "grounds" for a motion for dismissal.

20. It is obvious, of course, that the state legislature would have no power to limit the jurisdiction of a federal court.

