BYER MUSEUM OF the ARTS, Stephen Byer & Associates, Stephen B. Byer, and Barbara L. Byer, Plaintiffs,

v.

The NORTH RIVER INSURANCE COMPANY, Defendant.

No. 85 C 6055.

United States District Court, N.D. Illinois, E.D.

Nov. 22, 1985.

**1382**

Nicholas D. Chabraja, Linda Listrom, Daniel R. Warren, Jenner & Block, Chicago, Ill., for plaintiffs.

James T. Crotty, Scott W. Hoyne, James S. Stickles, Jr., Timothy J. Nalepka, Crotty & Hoyne, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

This case is before the Court on defendant's motion to dismiss, or in the alternative, stay this action in light of a nearly identical state action pending between the parties in the Circuit Court of Cook County.

## BACKGROUND

This case concerns an insurance policy issued by The North River Insurance Company ("defendant") to the Byer Museum of the Arts and Stephen Byer & Associates ("plaintiffs") insuring a building and its contents. The insured building is located in Evanston, Illinois and is occupied by plaintiffs: the Byer Museum and Stephen Byer & Associates.

On December 31, 1984, approximately three months after the insurance policy was issued, a fire occurred at the building causing extensive damage. In March and April of 1985 the plaintiffs submitted their claims to the defendant for the damage caused by the December fire. The defendant asserted that the claims were grossly inflated and, therefore, sought to have the policy declared null and void due to the plaintiffs' fraud. Plaintiffs asserted that the claim was proper and objected to the delay in payment.

Their differences defined, the parties began some elaborate strategic posturing within the state and federal judicial systems. On May 31, 1985, defendant filed suit in federal court seeking a declaratory judgment annulling its liability under the policy. Five days later, defendant voluntarily dismissed the federal action pursuant to Fed.R.Civ.P. Rule 41(a)(1)(i), and on the same day refiled the complaint for declaratory judgment in the Circuit Court of Cook County, Illinois under docket number 85 CH 5589 ("state action"). Nearly one month later, plaintiffs decided to file their own action in federal court based on the very same insurance policy and involving the same factual questions and parties. The plaintiffs' present federal action seeks the full amount claimed under the policy, attorneys' fees, statutory penalties under Ill.Rev.Stat. ch. 73 § 767, compensatory

damages and punitive damages.[1] Federal jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332.

## DISCUSSION

Having lost the race to the courthouse, the plaintiffs would like to start another race; a race to judgment between this Court and the Illinois state court. To prevent such a race to judgment and to conserve scarce legal and judicial resources, the defendant has moved to dismiss or stay the federal action based on alternative grounds, namely: § 2–619(a)(3) of the Illinois Code of Civil Procedure; and the *Colorado River* doctrine which allows federal courts to dismiss or stay federal actions in deference to concurrent state proceedings. For the following reasons defendant's motion to dismiss is granted.

▌ Because jurisdiction in the present litigation is premised on diversity of citizenship, Illinois state law is applicable under the well established principles of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guarantee Trust Co. of N.Y. v. New York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); and *Byrd v. Blue Ridge Elec. Coop., Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). Directly in issue is whether the *Erie* doctrine requires the application of an Illinois statutory provision which allows the dismissal of a cause of action involving the same cause and same parties as another pending action.

Section 2–619(a)(3), Ill.Rev.Stat. ch. 110, provides:

> Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds.
>
> \* \* \* \* \* \*
>
> (3) That there is another action pending between the same parties for the same cause.[2]

The Illinois Supreme Court has interpreted "same cause" to mean that "actions are 'for the same cause,' when relief is requested on substantially the same set of facts." *Skolnick v. Martin*, 32 Ill.2d 55, 203 N.E.2d 428 (1964), *cert. denied*, 381 U.S. 926, 85 S.Ct. 1562, 14 L.Ed.2d 684 (1965).

Though it is clear that the state and federal actions fall within the parameters of § 2–619(a)(3), plaintiffs contend that this statutory provision is merely a procedural device for use by the Illinois state courts and has no applicability to federal courts exercising diversity jurisdiction. This argument is contrary to the overwhelming weight of judicial decisions determining the applicability of § 2–619(a)(3) to federal courts sitting in diversity. *Simenc v. Holiday Inns, Inc.*, No. 83 C 5618, slip op. (N.D.Ill. Feb. 10, 1984) (Judge Moran); *Brite Industries v. Anderson*, No. 81 C 5593, slip op. (N.D.Ill. March 25, 1982) (Judge Kocoras); *Holmes v. Chicago Transit Authority*, 505 F.Supp. 877 (N.D.Ill. 1981) (Judge Leighton); *Carpets Interna-*

1. Ill.Rev.Stat. ch. 73 § 767 provides:

In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $5,000;

(c) the excess of the amount which the court or jury finds such party is entitled to

recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(2) Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

2. The Illinois Code of Civil Procedure was revised in 1982, providing for a new classification system. Section 2–619(a)(3) is the successor provision to former section 48(1)(c). The relevant language of the two provisions is unchanged.

*tional v. Quill Corp.*, No. 81 C 3489, slip op. (N.D.Ill. Nov. 2, 1981) (Judge Decker); *Repp v. F.E.L. Publications, Ltd.*, No. 80 C 3335, slip op. (N.D.Ill. Oct. 8, 1980) (Judge Leighton); *Holston v. The Rockford Surgical Service*, No. 80 C 173, slip op. (N.D.Ill. Sept. 22, 1980) (Judge Shadur); *General Investment Funds Real Estate Holding Company v. Exchange National Bank of Chicago*, No. 79 C 1286, slip op. (N.D.Ill. April 14, 1980) (Judge Aspen); *Kaiser v. Raymond Bolzan, Inc.*, No. 77 C 4122, slip op. (N.D.Ill. Dec. 4, 1978) (Judge Kirkland); *Klondike Helicopters, Ltd. v. Fairchild Hiller Corp.*, 334 F.Supp. 890 (N.D.Ill.1971) (Judge McGarr); *Seaboard Finance Company v. Davis*, 276 F.Supp. 507 (N.D.Ill.1967) (Judge Will). *See also Simmons v. Pulmosan Safety Equip Corp.*, 471 F.Supp. 999 (S.D.Ala.1979) (applying Alabama's version of § 2–619(a)(3) to federal courts).

Judge Will's opinion in *Seaboard, supra,* 276 F.Supp. 507, is considered the definitive work regarding the relationship between § 2–619(a)(3) and federal courts exercising diversity jurisdiction. *Seaboard* carefully analyzed the history and development of the *Erie* doctrine and concluded that *Erie* and its progeny require a federal court to consider several factors in determining whether state law applies. The factors are:

> (1) whether the variance between the state and local rule is such that it will affect the outcome of the litigation; (2) whether the variance is of a nature that it would encourage forum shopping; and (3) whether there is some countervailing federal consideration which would justify the variance. Where a substantial variance exists, the court must balance the first two factors against the third. Only if the countervailing considerations outweigh the possibilities of divergent administration of the laws and forum shopping, should the federal rule be applied.

276 F.Supp. at 515. Weighing these factors, the court held that § 2–619(a)(3)

must be applied by federal courts exercising diversity jurisdiction.

The Seventh Circuit has implicitly approved *Seaboard*'s analysis. In *Commonwealth Edison v. Gulf Oil Corp.*, 541 F.2d 1263, 1271–72 (7th Cir.1976) the Court distinguished *Seaboard*'s § 2–619(a)(3) analysis on the basis that *Seaboard* was premised on diversity jurisdiction whereas jurisdiction in *Commonwealth Edison* was based on a federal question under the Federal Arbitration Act, thereby relieving the district court of the obligation to consider state law.

The Seventh Circuit has had only one other occasion to consider the application of § 2–619(a)(3) to federal courts. In *Bio-Analytical Services, Inc. v. Edgewater Hospital*, 565 F.2d 450, 450 n. 6 (7th Cir.), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978) the court determined that the defendant had waived any right to raise a § 2–619(a)(3) motion to dismiss because of its failure to raise the motion in the district court and, therefore, held it was unnecessary to express any views as to the applicability of § 2–619(a)(3).

Despite the apparent authority of § 2–619(a)(3) to dismiss this case, plaintiffs argue that § 2–619(a)(3) cannot be applied because the provision conflicts with the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The Court disagrees with plaintiffs' contention. The two provisions are not in conflict, but are rather complementary avenues for dismissal. The *Colorado River* doctrine, in fact, provides the evaluative framework that should be used in conjunction with Judge Will's *Seaboard* analysis in determining whether dismissal is proper under § 2–619(a)(3).

■ *Colorado-River* represents an affirmation and expansion of the traditional federal court abstention doctrine.[3] In *Colora-*

---

**3.** The three traditional abstention categories are:

> (1) where " 'cases present a federal constitutional issue which might be mooted or

*do River* the Supreme Court recognized that federal courts could dismiss federal actions in deference to parallel state proceedings when the two courts were exercising concurrent jurisdiction, even though none of the traditional abstention categories were satisfied. Dismissals under this new doctrine are premised on "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*, at 817, 96 S.Ct. at 1246. Courts have been instructed to consider a variety of factors in determining when such federal deference should be exercised. The relevant considerations include: the federal interest in proceeding with the litigation; whether state or federal law provides the rule of decision on the merits; the avoidance of piecemeal litigation; the vexatious or reactive nature of either the state or federal action; the inconvenience of the federal forum; and the order in which jurisdiction was obtained by the concurrent forums. *Id.*, at 818–19, 96 S.Ct. at 1246–47; *Moses v. Cone Memorial Hospital v. Mercury Const.*, 460 U.S. 1, 103 S.Ct. 927, 938 n. 20, 941–42, 74 L.Ed.2d 765 (1983); *Micro Software Computer Systems v. Ontel Corp.*, 686 F.2d 531, 537 (7th Cir.1982). It is important to note that these factors encompass Judge Will's considerations in *Seaboard, supra,* when he made the initial determination that § 2–619(a)(3) applied to the federal courts. This Court believes that all of these factors have applicability to a § 2–619(a)(3) determination. Each of these factors will be considered seriatum.

### 1. FEDERAL INTEREST IN THE LITIGATION.

■ Plaintiffs' complaint does not present an important federal interest. This action's presence in federal court hinges only on the diverse citizenship of the parties. Although federal courts have been admonished not to treat diversity litigants as second-class litigants,[4] neither should the federal courts allow litigants to waste precious judicial resources and subvert the fundamental principles of federal jurisdiction.

■ The traditional purpose of diversity jurisdiction, protecting out-of-state litigants from prejudicial treatment, is not present in this case. As citizens of Illinois, the plaintiffs (state court defendants) are undeserving of the protections afforded by diversity jurisdiction. The Circuit Court of Cook County is quite capable of acting impartially towards each of the federal plaintiffs. Moreover, the Court believes that the plaintiffs have circumvented Congress' express desire to keep litigants, such as the plaintiffs, out of federal court. Congress, in enacting the removal provision, 28 U.S.C. § 1441(b), specifically provided that actions cannot be removed from state to federal court if the state defendants are citizens of the state in which the state litigation is brought. That is exactly the position plaintiffs are in.

Because plaintiffs have been foreclosed by Congress from removing this action and because the traditional justification for diversity jurisdiction is not present, the Court holds that there is no substantial federal interest served by proceeding with this case.

### 2. APPLICATION OF FEDERAL VERSUS STATE LAW.

■ The Supreme Court in its most recent opinion interpreting the *Colorado River* doctrine held that the presence of exclusively state-law issues may counsel in favor of deferring a federal action to a parallel

---

presented in a different posture by a state court determination of pertinent state law' "; (2) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and (3) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdic-

tion has been invoked for the purpose of restraining state criminal proceedings." *Colorado River,* 424 U.S. at 814–17, 96 S.Ct. at 1244–45.

**4.** *Evans Transportation Co. v. Scullin Steel Corp.*, 693 F.2d 715, 717 (7th Cir.1982).

state proceeding. *Moses v. Cone, supra,* 103 S.Ct. at 942. In this dispute both the state and federal litigants seek to determine the validity of a single insurance policy; a determination which requires the application of state-law principles. Neither party has asserted that any federal laws are in issue. Because this Court is compelled to apply Illinois substantiave law in its determination on the merits of this case, the Court must consider this factor as weighing in favor of dismissal.

### 3. AVOIDANCE OF PIECEMEAL LITIGATION.

 The ongoing state action between the parties will determine the validity of the insurance policy. Plaintiffs' federal action seeks a *de novo* determination of validity and, assuming the plaintiffs prevail, a finding that the failure to pay was vexatious and unreasonable, thereby entitling plaintiffs to an Illinois statutory penalty (Ill.Rev.Stat. ch. 73 § 767) and common law compensatory and punitive damages.

Plaintiffs' "counterclaim" for damages cannot justify this court in duplicating the trial process that is already underway in the state action. To do so "would be a grand waste of efforts by both courts and parties in litigating the same issues regarding the same [insurance policy] in two forums." *Microsoftware, supra,* 686 F.2d at 538. There is no indication that the Circuit Court of Cook County is incapable of thoroughly and fairly litigating all the issues presented in both the original state court action and plaintiffs' later filed federal action.

To have this Court make a separate determination as to the validity of the insurance policy will only result in an undesirable race to judgment. As the Seventh Circuit has held:

> Since the first court to decide the dispute will bind the other, the maintenance of an extra action will have a perceptible effect upon proceedings in the original action if the parties there attempt to accelerate or stall the proceedings in order to influence which court finishes first. The result would be quite similar to forum shopping, and is just as unseemly.

*Microsoftware,* 686 F.2d at 538. Moreover, if this Court were to stay the federal litigation pending the state court's validity determination and then exercise federal jurisdiction to decide plaintiffs' damages claim we would be promoting, not avoiding, piecemeal litigation.

### 4. VEXATIOUS OR REACTIVE LITIGATION.

 Plaintiffs' federal complaint is nothing more than a tactical maneuver responding to the jurisdictional machinations of the defendant. As plaintiffs themselves point out, the only reason the federal court is of interest is the fact that some of the federal judges in the Northern District of Illinois have allowed recovery for both the statutory penalty under Ill.Rev.Stat. ch. 73 § 767 and common law remedies for vexatious and unreasonable failure to pay insurance claims. The First District of Illinois, in which the Circuit Court of Cook County sits, has held that recovery under Ill.Rev. Stat. ch. 73 § 767 precludes recovery for common law punitive damages.[5]

5. The fact that the state court has lesser remedies available than what might have been available in the federal forum is not a reason for denying dismissal under § 2–619(a)(3). In *Cummings v. Iron Hustler Corp.,* 118 Ill.App.3d 327, 73 Ill.Dec. 829, 454 N.E.2d 1078 (3rd Dist. 1983) the appellate court approved the dismissal of plaintiff's circuit court retaliatory discharge action because he had already instituted a complaint of a civil rights violation with the Illinois Human Rights Commission. This was true even though the plaintiff could seek punitive damages in the state court retaliatory discharge action, but could not receive punitive damages

from the Human Rights Commission. The court holding that:

> This distinction, without more, does not mandate a reversal on grounds that the "causes" are different or that the trial court abused its discretion in ordering dismissal. We do not find that the purpose of section [2–619(a)(3)] of avoiding duplicative litigation is outweighed by the public policy furthered by allowing the extraordinary remedy of punitive damages, in addition to compensatory relief, in retaliatory discharge awards.

We condone neither of the parties conduct; however we will not allow the plaintiffs to wield the federal forum as its pawn in their strategic maneuvering with the defendant. Plaintiffs' rights can be defined and protected in the state court action. There is no reason for this Court to reward plaintiffs with an additional opportunity to litigate the same issues that are being determined in the state action. The presence of a parallel federal action can only impede a speedy and fair determination in the state court proceeding.

### 5. INCONVENIENCE OF THE FEDERAL FORUM.

Less than five blocks separate the respective courthouses of the Circuit Court of Cook County and the Federal District Court in Chicago, so it cannot be said that either forum is more or less convenient than the other. This is the only factor that does not counsel in favor of dismissal.

### 6. ORDER OF FILING.

Although the Seventh Circuit has held that the order of the filing has little significance by itself,[6] it is nevertheless a factor the Supreme Court has instructed courts to consider. It may well be that this factor is analogous to the forum non conveniens principle of giving considerable weight to the original plaintiff's choice of forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Whatever the importance of this factor, and we assume it is minimal, it nonetheless weighs in favor of dismissing the federal action.

### CONCLUSION

 Given the plethora of district court opinions applying § 2–619(a)(3) to diversity actions and given the ambiguous, but apparently supportive position of the Seventh Circuit, this Court finds *Seaboard*'s analysis compelling and believes § 2–619(a)(3) must be applied to this action. Moreover, in applying the later developed *Colorado River* factors to our § 2–619(a)(3) dismissal

118 Ill.App.3d at 333, 73 Ill.Dec. at 833, 454 N.E.2d at 1082. (Citations omitted.)

determination, we conclude that dismissal is appropriate. Judicial interests in conserving scarce resources and insuring the proper exercise of federal jurisdiction will be served best by allowing the Circuit Court of Cook County to decide this state issue unimpeded by the presence of a parallel federal proceeding.

For the reasons set forth herein, defendant's motion to dismiss is GRANTED.

6. *Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d 715, 718 (7th Cir.1982).