**AETNA CASUALTY AND SURETY COMPANY OF HARTFORD, CONNECTICUT, Plaintiff–Appellant,**

v.

**KERR–MCGEE CHEMICAL CORPORATION, American Potash & Chemical Corporation and Kerr–McGee Refining Corporation, Defendants–Appellees.**

No. 88–2610.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1989.

Decided May 5, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc July 13, 1989.

Daniel G. Litchfield, Burditt Bowles Radzius & Ruberry, Chartered, Chicago, Ill., for plaintiff-appellant.

Richard A. Meserve, Covington & Burling, Washington, D.C., for defendants-appellees.

Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff Aetna Casualty and Surety Company ("Aetna"), appeals the district court's dismissal of its declaratory judgment action against the defendants, Kerr–McGee Chemical Corporation, Kerr–McGee Refining Corporation and American Potash and Chemical Corporation. We affirm.

## I.

The defendants are either wholly owned subsidiaries or predecessors in interest of Kerr–McGee Corporation ("Kerr–McGee"). Since the mid–1960's, Kerr–McGee has been involved, either on its own behalf or through its subsidiaries, in manufacturing, processing and refining activities which have resulted in the production of significant amounts of allegedly hazardous waste materials. In connection with the production and disposal of these wastes, Kerr–McGee has been sued by individuals and government entities for bodily injury and property damage, and by the United States for cleanup costs under the Superfund law. In addition, various state and federal regulatory agencies, including the Environmental Protection Agency and the Nuclear Regulatory Commission, are currently conducting investigations of Kerr–McGee's production, handling and disposal of the waste materials it generated.

Much of the litigation and regulatory activity involves the operation, by American Potash and Kerr–McGee Chemical, of a facility in West Chicago, Illinois, which processed radioactive materials. However, Illinois is not the only center of activity. The Superfund litigation is currently pending in Oklahoma, and involves Kerr–McGee Refining's alleged dumping of hazardous wastes at a site located near Criner, Oklahoma. Kerr–McGee Chemical is also the defendant in three suits in California, brought by former Kerr–McGee Chemical employees and their families, or residents living near Kerr–McGee Chemical facilities, which allege bodily injury and property

damage arising out of exposure to hazardous or toxic chemicals.

Over the past twenty-five years, Kerr–McGee purchased comprehensive general and excess liability insurance policies from a variety of insurance carriers, including Aetna, which provided coverage to the parent and its subsidiaries for specified bodily injury and property damage claims. American Potash, which operated the West Chicago facility prior to the corporation's purchase by Kerr–McGee, also had primary and excess liability policies with Aetna and others. On October 27, 1987, Kerr–McGee sued twelve insurance companies on behalf of itself, its subsidiaries and American Potash in Oklahoma state court. Kerr–McGee alleged that the defendant insurers had breached their contracts with Kerr–McGee or its subsidiaries by refusing to indemnify Kerr–McGee or its subsidiaries for the liability they had incurred, and by refusing to defend the pending judicial and administrative actions. Kerr–McGee prayed for money damages for its defense and liability costs to date, as well as a declaration that the insurers had an obligation to defend and indemnify parent and subsidiaries in the future.[1]

Aetna attempted to remove the Oklahoma action to federal court. Although there was not complete diversity of citizenship between Kerr–McGee and all defendants, Aetna argued that its controversy with Kerr–McGee was "separate and independent" from Kerr–McGee's dispute with the other insurers, and therefore, under 28 U.S.C. section 1441(c), removal was proper despite the lack of complete diversity. The Oklahoma district court rejected this argument, and remanded the case to state court.

[P]laintiff's complaint is that it did not receive what it paid for ..., namely, a *package of protection out of many policies that overlap and interlock temporally* .... The overlap in this case is like that of the shingles on a roof or the scales of a fish. *The policies have relationships with the ones ahead, behind, and (as to primary and excess coverage) above and below.* Plaintiff ... bottoms its case on the total impact of the collective conduct of defendants.... [E]ach defendant's liability, if plaintiff proves its case, is but a facet, and not "independent".

*Kerr–McGee Corp. v. Aetna Casualty & Sur. Co.*, Nos. CIV 87–2378–A, –2380–A, –2355–A & –2364–A, mem. op. at 3–4 (W.D. Okla. Feb. 22, 1988) (emphasis added).

Aetna subsequently filed a motion to dismiss the Oklahoma state court action, alleging, among other grounds, that Kerr–McGee, the parent, was not the real party in interest, and could not sue "on behalf of" its subsidiaries for injuries which they had suffered. This motion was denied.

Having failed to extricate itself from the the Oklahoma state-court litigation, Aetna filed its declaratory judgment complaint in the district court on April 1, 1988. The complaint does not name Kerr–McGee (the parent company and sole plaintiff in Oklahoma) as a defendant. Instead, the complaint names as defendants only Kerr–McGee Chemical, Kerr–McGee Refining and American Potash. Aetna seeks a declaration that it is not liable to the defendants for any financial loss they may suffer due to the judicial and administrative proceedings discussed above. Although the parties involved in the Oklahoma and Illinois actions are not identical, the district

---

**1.** It is clear from an examination of Kerr–McGee's complaint, and the insurance policies on which Kerr–McGee's claims against Aetna rest, that Kerr–McGee is suing primarily, if not exclusively, to vindicate the rights of its subsidiaries. The Aetna policies do *not* insure the subsidiaries for the parent's benefit, as is the case with "key man" insurance, in which the employer takes out a policy on the life or health of a key employee. Instead, the Kerr–McGee subsidiaries are themselves named insureds of the Aetna policies, as is indicated on the decla-

rations pages of the policies, and in endorsements which specifically provide that the "named insured is: Kerr–McGee ... and its subsidiary, owned, controlled, and managed companies or corporations as now or hereafter constituted." Therefore, the subsidiaries could have sued to assert their own contract rights under the Aetna insurance policies. This fact is *of some significance to our analysis, as the* discussion below of the "same parties" requirement of Ill.Rev.Stat. ch. 110, ¶ 2–619(a)(3) demonstrates.

court dismissed Aetna's complaint, finding that there was "another action pending between the same parties for the same cause" and that "[t]he question[s] which Aetna seeks to have resolved here necessarily will be resolved in the Oklahoma litigation." *Aetna Casualty & Sur. Co. v. Kerr–McGee Chemical Corp.*, No. 88 C 2826, mem. op. at 2, 1988 WL 77055 (N.D. Ill. July 15, 1988). Aetna has appealed the district court's dismissal.

## II.

The district court dismissed the suit under the authority of Illinois Revised Statutes chapter 110, section 2–619, which provides:

> (a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds[:]
>
> .    .    .    .    .
>
> (3) That there is another action pending between the same parties for the same cause.

This court has not previously decided whether section 2–619(a)(3) applies in diversity cases in federal court under the Rules of Decision Act, 28 U.S.C. section 1652, and *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The court referred to the *Erie* question in *Commonwealth Edison Co. v. Gulf Oil Co.,* 541 F.2d 1263, 1271–72 (7th Cir.1976), but did not decide the issue since the plaintiff in that case invoked the court's federal question jurisdiction, and therefore the *Erie* doctrine was not applicable in any event. The district courts in this circuit have generally applied section 2–619(a)(3) without extended discussion of the *Erie* issue, relying on Judge Will's detailed analysis in *Seaboard Finance Co. v. Davis,* 276 F.Supp. 507, 512–17 (N.D.Ill.1967). *See, e.g., Schiller v. Packaging Store, Inc.,*

690 F.Supp. 711, 713 n. 5 (N.D.Ill.1988); *Ball v. Deere & Co.,* 684 F.Supp. 1455, 1456 (C.D.Ill.1988); *General Elec. Co. v. Lofton,* 675 F.Supp. 1107, 1108 (N.D.Ill.1987); *Granite Constr. Co. v. Metropolitan Sanitary Dist.,* No. 82 C 6536, mem. op. at 7–8, 1986 WL 13719 (N.D.Ill. Nov. 19, 1986);[2] *Byer Museum of Arts v. North River Ins. Co.,* 622 F.Supp. 1381, 1383–84 (N.D.Ill. 1985). Since Aetna does not challenge the district court's application of section 2–619(a)(3) in this appeal, we will apply the Illinois statute without deciding whether it is properly controlling in federal diversity litigation. *Cf. Corrugated Paper Prods., Inc. v. Longview Fibre Co.,* 868 F.2d 908, 910 n. 2 (7th Cir.1989) (choice of law issue waived where appellant does not challenge district court's choice of governing law); *Checkers, Simon & Rosner v. The Lurie Corp.,* 864 F.2d 1338, 1345 (7th Cir.1988) (same).

Where the criteria of section 2–619(a)(3) are met, dismissal is not automatic; instead, the trial court must make a discretionary decision whether or not to dismiss. *Kellerman v. MCI Telecommunications Corp.,* 112 Ill.2d 428, 447, 98 Ill.Dec. 24, 32, 493 N.E.2d 1045, 1053, *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986); *A.E. Staley Mfg. Co. v. Swift & Co.,* 84 Ill.2d 245, 252–53, 50 Ill.Dec. 156, 160, 419 N.E.2d 23, 27 (1980). The trial court's dismissal of an action under section 2–619(a)(3) may be upset on appeal only if the dismissal constituted an abuse of discretion. *Illinois Cent. Gulf R.R. Co. v. Goad,* 168 Ill.App.3d 541, 544, 119 Ill.Dec. 183, 185, 522 N.E.2d 845, 847 (4th Dist. 1988); *Golden Rule Ins. Co. v. Robeza,* 151 Ill.App.3d 801, 804, 806, 104 Ill.Dec. 410, 413, 414, 502 N.E.2d 1070, 1073, 1074 (5th Dist.1986); *cf. Day v. Union Mines, Inc.,* 862 F.2d 652, 654 (7th Cir.1988) (district court's decision whether to stay action un-

**2.** A recent decision of this court, citing Circuit Rule 53(b)(2)(iv), suggests that unpublished district court opinions may not be cited as precedent. *Standard Mut. Ins. Co. v. Bailey,* 868 F.2d 893, 895 n. 2 (7th Cir.1989); *see also id.* at 896 n. 3. However Circuit Rule 53 states only that the unpublished orders *of this court* have no precedential value. With respect to the precedential

value of opinions of other courts, we may look to the rules of those courts. If there is no rule in the court rendering a decision limiting the precedential value of its opinions, those opinions may be cited and are entitled to whatever weight the persuasive force of their reasoning warrants.

der *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), reviewed only for abuse of discretion).

Aetna argues that its suit should not have been dismissed for two reasons: first, the Oklahoma state court proceeding and the federal declaratory judgment action were not suits "between the same parties"; and second, the case had a "legitimate and substantial relation to Illinois" and, under *A.E. Staley Manufacturing Co. v. Swift & Co.*, 84 Ill.2d 245, 50 Ill.Dec. 156, 419 N.E. 2d 23 (1980), section 2–619(a)(3) should not be employed to dismiss actions having such a significant connection to Illinois.

### A.

■ Aetna argues that this case and the Oklahoma action do not involve the "same parties" because this action is being prosecuted against Kerr–McGee subsidiaries, while the Oklahoma action is being pursued by Kerr–McGee, the parent.[3] Aetna asserts that Illinois law treats parent and subsidiary corporations as separate entities; generally, one corporate entity may not sue or be sued on contracts entered into by another corporation. Aetna also notes that a judgment against the parent in the Oklahoma action would not act as res

judicata against the subsidiaries, who are defendants in the present declaratory judgment suit.

Aetna's first argument, that Illinois law bars a parent and subsidiary from litigating each other's contractual rights, is an argument which is appropriately addressed to the Oklahoma court. In fact, Aetna did present its "wrong party" argument in Oklahoma, but the state court there held that Kerr–McGee could sue to vindicate the rights of its subsidiaries under the Aetna insurance policies. Although we might not have held, as an initial matter, that the parent could sue Aetna for injuries suffered by its subsidiaries,[4] that issue has been decided in Oklahoma adversely to Aetna; all we need note here is that Kerr–McGee is in fact litigating the subsidiaries' breach of contract claims in Oklahoma, consistent with that state's rules regarding proper parties.

Aetna's argument that the Illinois and Oklahoma actions do not involve the "same parties" assumes that section 2–619(a)(3) requires a strict identity of parties. However, the Illinois courts have interpreted section 2–619 more broadly: resort to section 2–619(a)(3) is appropriate as long as "substantially the same" parties are involved in the Illinois and foreign suits.[5]

3. On April 21, 1989, Kerr–McGee filed a "Report on Recent Developments" with this court, which indicated that it had filed, on April 5, a petition to amend its complaint in the Oklahoma action to add its subsidiaries, Kerr–McGee Chemical and Kerr–McGee Refining, as parties-plaintiff. While Kerr–McGee continues to take the position that it is the proper party to sue for injuries to its subsidiaries, the amendment was filed "to avoid any unnecessary disputes." The status of Kerr–McGee's amended complaint is currently unclear; Aetna and other defendants have raised numerous objections to the amendment. Although the present appeal is indeed an "unnecessary dispute" which could have been avoided by the careful framing of Kerr–McGee's Oklahoma complaint in the first instance, this opinion disregards Kerr–McGee's belated attempts to amend its Oklahoma pleadings, since the propriety of the amendments will apparently not be settled for some time.

4. In essence, Kerr–McGee's Oklahoma action is a derivative suit, in which the plaintiff, a stockholder, seeks to litigate "on behalf of" the corporation to vindicate the corporation's rights. A stockholder must ordinarily demand that the

corporation take action to vindicate its rights before bringing a derivative action on the corporation's behalf. *See, e.g., Starrels v. First Nat'l Bank of Chicago*, 870 F.2d 1168, 1170–72 (7th Cir.1989) (Delaware law).

5. *West Bend Mut. Ins. Co. v. Salemi*, 158 Ill.App. 3d 241, 251, 110 Ill.Dec. 608, 614, 511 N.E.2d 785, 791 (2d Dist.1987); *Golden Rule Ins. Co. v. Robeza*, 151 Ill.App.3d 801, 804, 104 Ill.Dec. 410, 412–13, 502 N.E.2d 1070, 1072–73 (5th Dist. 1986), *app. denied*, 114 Ill.2d 545, 108 Ill.Dec. 417, 508 N.E.2d 728 (1987); *Forsberg v. City of Chicago*, 151 Ill.App.3d 354, 372, 104 Ill.Dec. 20, 34, 502 N.E.2d 283, 297 (1st Dist.1986), *app. dismissed*, —— U.S. ——, 108 S.Ct. 363, 98 L.Ed. 2d 351 (1987); *Application of Cook County Treasurer*, 124 Ill.App.3d 797, 802, 80 Ill.Dec. 382, 385, 465 N.E.2d 494, 497 (1st Dist.1984) (to determine whether two suits involve "same parties," court must look to real party in interest, not merely named litigants); *Catalano v. Aetna Casualty & Sur. Co.*, 105 Ill.App.3d 195, 197, 61 Ill.Dec. 94, 96, 434 N.E.2d 31, 33 (2d Dist.1982) (where spouses the joint owners of residence and wife already suing for recovery under

The "same parties" requirement may be satisfied even though technically distinct corporate entities are involved in the various pending actions. For example, in *Cummings v. Iron Hustler Corp.*, 118 Ill. App.3d 327, 73 Ill.Dec. 829, 454 N.E.2d 1078 (3d Dist.1983), a discharged employee sued his former employer, Iron Hustler, the employer's successor corporation, American Pulverizer, and one of the successor's wholly owned subsidiaries, Hustler Conveyor. The suit was dismissed under section 2–619(a)(3) in favor of an administrative proceeding pending before the Illinois Human Rights Commission, in which only the former employer was a defendant. The court did not tarry long over plaintiff's argument that the two actions did not involve the "same parties": "[T]he *obvious privity* among Iron Hustler, American Pulverizer and Hustler Conveyor Corp., render[s] the parties *sufficiently similar in interest* to survive plaintiff's challenge to the 'same party' element." *Id.* at 333, 73 Ill.Dec. at 834, 454 N.E.2d at 1083 (emphasis added). In the present case, Kerr-McGee Corporation is suing "on behalf of" its subsidiaries to obtain a remedy for injuries the subsidiaries have suffered. Clearly, the parent's and the subsidiaries' interests are sufficiently congruent to satisfy the "same parties" requirement of section 2–619(a)(3), despite the legal separateness of parent and subsidiary corporations for other purposes.

Aetna's third contention is that a judgment in Oklahoma would not act as res judicata against the Kerr-McGee subsidiaries who are defendants here. If there were in fact no res judicata effect, such a state of affairs would raise grave doubts about the applicability of section 2–619 to the present proceeding. The Illinois courts have stated repeatedly that the purpose of section 2–619 is "to relieve both courts and litigants of the unnecessary burden of du-

plicative litigation," to "ensure[ ] that the controversy will be more speedily *and finally* determined according to the substantive rights of the parties." *Ransom v. Marrese*, 122 Ill.2d 518, 530, 120 Ill.Dec. 525, 530–31, 524 N.E.2d 555, 560–61 (1988) (emphasis added); *see also People ex rel. Dep't of Pub. Aid v. Santos*, 92 Ill.2d 120, 127, 65 Ill.Dec. 21, 24, 440 N.E.2d 876, 879 (1982); *A.E. Staley Mfg. Co. v. Swift & Co.*, 84 Ill.2d 245, 252, 50 Ill.Dec. 156, 160, 419 N.E.2d 23, 27 (1980). Clearly, if a foreign judgment will not bar a later proceeding on the same claim, the purpose of section 2–619 is not served by dismissing the Illinois suit in the first place. Accordingly the "same parties" requirement of section 2–619(a)(3) is met only where the parties in the two actions have sufficiently similar interests so that res judicata would apply between them. *Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428, 447–48, 98 Ill.Dec. 24, 32, 493 N.E.2d 1045, 1053 (in determining applicability of § 2–619(a)(3), court should consider "the *res judicata* effect of a foreign judgment in the local forum"), *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986); *Speakers of Sport, Inc. v. U.S. Tel., Inc.*, 149 Ill.App.3d 898, 903–04, 103 Ill.Dec. 297, 301, 501 N.E.2d 318, 322 (1st Dist.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 288, 98 L.Ed.2d 248 (1987). We believe that res judicata would apply between Kerr-McGee, the parent, and its subsidiaries; therefore the "same parties" requirement of section 2–619 has been met.

Although Aetna argues that in Illinois "[a] judgment is only *res judicata* against one named as a party," the Illinois courts have recognized for some time that a suit in which a corporation is a party collaterally estops a shareholder asserting the same claims in a later action, unless the judgment was obtained by fraud or from a court lacking subject matter jurisdiction.[6]

homeowner's insurance policy, husband's suit alleging identical claim dismissed); *Ball v. Deere & Co.*, 684 F.Supp. 1455, 1458 (C.D.Ill. 1988) (Illinois action brought by husband and wife dismissed in favor of Canadian suit brought only by husband).

6. *See, e.g., Singer v. Hutchinson*, 183 Ill. 606, 612–13, 56 N.E. 388, 390 (1900); *People ex rel. Palmer v. Central Mut. Ins. Co.*, 313 Ill.App. 84, 102, 39 N.E.2d 400, 408 (1st Dist.1942); *Eagle Indemnity Co. v. Haaker*, 309 Ill.App. 406, 412, 33 N.E.2d 154, 156 (1st Dist.1941); *Charles E. Harding Co. v. Harding*, 264 Ill.App. 121, 139

However, in the case before us the situation is reversed: the first suit is by the shareholder (the parent company), rather than by the corporation. Since the Illinois courts have not previously addressed the question whether claim or issue preclusion applies in this instance, we must dig deeper into the question whether a suit in which a shareholder is a party collaterally estops the corporation from asserting the same claim in a later action.

■ A useful starting point in this inquiry is section 59 of the Restatement (Second) of Judgments, which provides rules for determining the preclusive effect of a judgment against a corporation or against its shareholders on the uninvolved party. Subsection 2 provides that "the judgment in a derivative action by [the corporation's] stockholders or members is binding on the corporation." The formal characterization of the suit as a derivative action is not controlling:

> Occasionally, particularly in the case of a closely held corporation, an action is brought by a person who is a stockholder or member of a corporation seeking redress for a wrong allegedly inflicted on the corporation by a third person. The action is not denominated a derivative suit nor predicated on the corporation's failure or refusal to bring the action, but is prosecuted as though the stockholder or member were the proper person to maintain it. If the plaintiff in such an action has substantially the entire ownership of the corporation, the action is in substance a derivative suit, and is properly treated as such for the purpose of precluding the corporation from maintaining a subsequent action on the claim.

Rest. (2d) of Judgments § 59, comment c (1982). Although Kerr–McGee's Oklahoma action is not formally denominated a derivative suit, it is clear from the Oklahoma

complaint that the parent is suing "on behalf of" its wholly owned subsidiaries, for injuries which the subsidiaries have directly suffered. Any judgment in the Oklahoma action will be binding on the subsidiaries under principles of preclusion applicable to stockholder's derivative actions.[7]

Whether or not the Oklahoma action is in substance a derivative suit, there is a separate ground on which res judicata could be applied to the results of the parent's suit: the judgment in a suit brought by a shareholder of a closely held corporation is binding on the corporation, absent prejudice to third parties, such as other shareholders or creditors. Section 59 of the Restatement provides:

> (3) If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined as follows:
>
> (a) The judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue; and
>
> (b) The judgment in an action by or against the holder of ownership in the corporation is conclusive upon the corporation except when relitigation of the issue is justified in order to protect the interest of another owner or a creditor of the corporation.

The preclusive effect of a prior decision for or against the stockholder does not depend on a finding that the corporation is the shareholder's "alter ego," such that "piercing the corporate veil" for all purposes would be appropriate.

---

(1st Dist.1931), *aff'd,* 352 Ill. 417, 186 N.E. 152 (1933). More recently, the Illinois Appellate Court has suggested that the party claiming estoppel must prove that the stockholders were in complete control of the corporation at the time of the earlier litigation. *Cohen v. Schlossberg,* 17 Ill.App.2d 320, 329, 150 N.E.2d 218, 223 (1st Dist.1958); *Dishinger v. Bon Air Catering, Inc.,*

336 Ill.App. 557, 564–65, 84 N.E.2d 562, 566 (2d Dist.1949).

7. *See, e.g., Kaplan v. Bennett,* 465 F.Supp. 555, 560 (S.D.N.Y.1979); *Gagnon Co. v. Nevada Desert Inn, Inc.,* 45 Cal.2d 448, 289 P.2d 466, 471 (1955) (shareholder's derivative action barred by prior suit on same claim by corporation).

When the corporation is closely held, [ ] interests of the corporation's management and stockholders and the corporation itself generally fully coincide.... If the corporate form is ignored by the corporation's proprietors the corporation may be treated as their alter ego, with the consequence that they are personally liable for the corporation's obligations. When the form is adequately adhered to, the fact that interests of a closely held corporation and its proprietors are usually identical does not efface the separate legal identity of the corporation for such purposes as taxation, regulation, and the limitation of the stockholders' liability to their investment in the corporation. For the purpose of affording opportunity for a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.

*... This identity of interest is perhaps most likely when the controlling owner is the parent of a subsidiary corporation,* for in that case what is usually involved is a single enterprise organized in multiple legal forms.

Comment e (emphasis added; citation omitted).

The Restatement sets up different standards for preclusion in connection with closely held corporations depending on the "direction" in which the preclusion "runs": if a person seeks to preclude relitigation by a shareholder based on a prior suit by the corporation, the person claiming preclusion must show that the shareholder "actively participated in the action"; however, if estoppel is asserted against the corporation based on prior litigation by a shareholder, preclusion is only denied where the interests of third parties would be unfairly concluded by barring relitigation. Cases which assert that the shareholder's actual control of the prior litigation is a prerequisite to preclusion based on a judgment against the corporation[8] are not relevant here since *the shareholder* (i.e. the parent corporation) is litigating the first suit. In these circumstances, the corporation (i.e. the Kerr–McGee subsidiaries) will be bound by any judgment in the shareholder's suit, unless harm to another shareholder (of which there are apparently none in this case) or to a creditor can be shown. Although they have not explicitly considered this issue, it appears that the Illinois courts have recognized that the judgment in an action brought by a shareholder of a closely held corporation is binding on the corporation in later litigation.[9]

For these reasons, the Kerr–McGee subsidiaries would be bound by the results of the Oklahoma litigation brought on their

**8.** *See, e.g., In re Teltronics Serv., Inc.,* 762 F.2d 185, 191 (2d Cir.1985) ("A judgment against a corporation bars later litigation on the same cause of action by an officer, director, or shareholder of the corporation if the individual participated in and effectively controlled the earlier case."); *In re Gottheiner,* 703 F.2d 1136, 1139–40 (9th Cir.1983); *Drier v. Tarpon Oil Co.,* 522 F.2d 199, 200 (5th Cir.1975) (per curiam); *Eagle Transp. Ltd., Inc. v. O'Connor,* 470 F.Supp. 731, 733 (S.D.N.Y.1979); *Union Oil of Cal. v. Watson,* 468 So.2d 349, 355 (Fla.App.), *rev. denied,* 479 So.2d 119 (Fla.1985); *Miller v. Northwestern Nat'l Ins. Co.,* 354 N.W.2d 58, 62 (Minn.App. 1984). In a recent decision, the Second Circuit appears to have substantially relaxed the standards for finding a shareholder estopped based on earlier litigation in which the corporation was a party. *Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634, 640–41 (2d Cir.) (finding shareholder barred without considering whether shareholder had actual or constructive control of earlier litigation), *cert. denied,* —— U.S. ——, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987); *see also Green v. American Broadcasting Co.,* 572 F.2d 628, 631–32 (8th Cir.1978).

**9.** *See C.I.S., Inc. v. Kann,* 76 Ill.App.3d 109, 111, 394 N.E.2d 916, 918 (2d Dist.1979) ("Mini was the president of C.I.S. and owned or controlled its stock at the time of the first litigation. It is apparent that privity exists between C.I.S. and Mini to the extent necessary for the application of the doctrine of estoppel in this case [based on a prior action prosecuted by the shareholder]."). Other courts have adopted a similar approach. *See, e.g., Bodnar v. Brinsfield,* 60 Md.App. 524, 483 A.2d 1290, 1296–97 (1984); *Red Carpet Corp. v. Roberts,* 443 So.2d 377, 380 (Fla.App. 1983), *rev. denied,* 488 So.2d 68 (Fla.1986); *but see Dakota Servs., Inc. v. Wieman Land & Auction Co.,* 429 N.W.2d 480, 482 (S.D.1988).

behalf by the subsidiaries' sole shareholder, Kerr–McGee Corporation. Therefore the "same parties" requirement of section 2–619(a)(3) is satisfied in this case.

### B.

Even if the "same parties" requirement of section 2–619 is met, Aetna argues that its suit should not have been dismissed because its claims bear a "legitimate and substantial relation to Illinois." This exception to section 2–619(a)(3) was first recognized in *A.E. Staley Manufacturing Co. v. Swift & Co.*, 84 Ill.2d 245, 50 Ill.Dec. 156, 419 N.E.2d 23 (1980). In *Staley*, both corporations had their principal places of business in Illinois and the contract at issue specified that Illinois substantive law would govern the agreement. In these circumstances, the Supreme Court held that section 2–619(a)(3) did not mandate dismissal of the Illinois action.

Later cases have made clear that a party seeking to prevent dismissal under *Staley* must show that the suit has a more substantial relationship to Illinois than that required to defeat a motion to dismiss on *forum non conveniens* grounds. In *Natural Gas Pipeline Co. v. Phillips Petroleum Co.*, 163 Ill.App.3d 136, 114 Ill.Dec. 372, 516 N.E.2d 527 (1st Dist.1987), *app. denied*, 118 Ill.2d 546, 117 Ill.Dec. 226, 520 N.E.2d 387 (1988), the court affirmed a section 2–619(a)(3) dismissal in a case in which the plaintiff's principal place of business was in Illinois, the defendant did substantial business in Illinois, a significant portion of the contract's performance occurred in Illinois and the contract involved the purchase of natural gas for Illinois consumers. Since the foreign action was "the broader ... [and] more dispositive litigation," the circuit court had not abused its discretion by dismissing under section 2–619(a)(3), even though it had previously denied a motion to dismiss on *forum non conveniens* grounds. 163 Ill.App.3d at 146, 114 Ill.Dec. 378, 516 N.E.2d at 533. The appellate court specifically held that "in exercising the wide discretion *Staley* recognized a trial court possesses in this context, it may decide that, notwithstanding a plaintiff's defeat of a *forum non conveniens* motion, the relationship between litigation and an Illinois forum is not so substantial that it supersedes the purpose of section 2–619(a)(3) 'to avoid duplicative litigation.' " *Id.* at 145, 114 Ill.Dec. at 377, 516 N.E.2d at 532. It is instructive that courts have relied on *Staley* and retained jurisdiction only where Illinois was virtually the unique focus of the litigation.[10]

We cannot hold that the present case bears such a substantial connection to Illinois that the district court's dismissal constituted an abuse of discretion. While Kerr–McGee's West Chicago facility is clearly of central importance to this insurance dispute, the current controversy also involves coverage issues arising out of Kerr–McGee's disposal of wastes at a facility in Oklahoma[11] and a number of actions filed against Kerr–McGee by former employees in California. And although both Kerr–McGee and Aetna are "residents" of Illinois in the limited sense that both are

**10.** *See, e.g., Travelers Ins. Co. v. Holland Farms, Inc.*, 152 Ill.App.3d 389, 392, 105 Ill.Dec. 432, 434, 504 N.E.2d 532, 534 (3d Dist.1987) (foreclosure on land located in Illinois); *Golden Rule Ins. Co. v. Robeza*, 151 Ill.App.3d 801, 805, 104 Ill.Dec. 410, 413, 502 N.E.2d 1070, 1073 (5th Dist.1986) (insured an Illinois resident, insurer incorporated in Illinois with its headquarters in Illinois and insurance policy executed in Illinois through an Illinois insurance agent), *app. denied*, 114 Ill.2d 545, 108 Ill.Dec. 417, 508 N.E.2d 728 (1987); *Lyons Sav. & Loan Ass'n v. Geode, Inc.*, 626 F.Supp. 1141, 1144 (N.D.Ill.1986) (loan contract executed in Illinois by Illinois bank, and contract indicated "that the parties contemplated an Illinois forum").

**11.** On December 23, 1988, Aetna filed a motion to supplement the record on appeal with briefs filed by the parties in the Oklahoma Supreme Court, in connection with Aetna's request for a writ of prohibition. Although Aetna argues that these briefs contain "admissions" by Kerr–McGee that Aetna has no conceivable liability for dumping at the Criner, Oklahoma waste site, the briefs deal only with the issue of venue, and contain no binding admissions by Kerr–McGee. Aetna's potential liability for cleanup costs for the Criner site remains to be litigated in the state court. Since the material Aetna has submitted does not seem relevant to the issues involved in this appeal, its motion to supplement the record will be denied.

qualified to do business in the state, neither the plaintiff nor the defendants maintain their principal places of business in Illinois. Further, where, as here, a controversy involves a number of interrelated insurance policies covering an insured in different amounts and for different time periods, fairness to all parties requires that the dispute be resolved in a single comprehensive litigation. The preference expressed in *Natural Gas Pipeline* for "the broader, more dispositive litigation" is compelling here, where the parties might be exposed to inconsistent judgments if the litigation were to proceed simultaneously in a number of fora.[12]

The foregoing discussion does not foreclose the possibility that in a similar situation in the future, a trial court might decide to retain jurisdiction of an Illinois lawsuit despite the pendency of a related, more comprehensive action elsewhere. Under the abuse of discretion standard of appellate review, we need not proclaim a uniquely fitting algorithm which must govern all similar situations in the future. "Under the abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but rather, whether any reasonable person could agree with the district court." *United States v. $103,387.27 in U.S. Currency*, 863 F.2d 555, 561 (7th Cir.1988); *see also Valbert v. Pass*, 866 F.2d 237, 239 (7th Cir.1989) (" 'If reasonable men could differ as to the propriety of the district court's action, no abuse of discretion has been shown.' " (ci-

tation omitted)). Thus, although we concede that the *Staley* issue presented here is close, and although we might have ruled differently if presented with the issue in the first instance, we cannot hold that the district court abused its discretion by dismissing Aetna's declaratory judgment action.

One final point deserves brief mention. The district court did not merely stay Aetna's suit pending final resolution of the Oklahoma action; it dismissed the case. Under the *Colorado River* doctrine, a stay of the federal action is usually considered more appropriate than a dismissal. *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308–09 (7th Cir.1988); *Lumen Constr. Co. v. Brant Constr. Co.*, 780 F.2d 691, 698 (7th Cir. 1986). However, it appears that section 2–619 may authorize broader remedies than are available under *Colorado River*.[13] Aetna did not raise this issue in the district court, and has not pursued it on appeal. We therefore do not address the question whether section 2–619(a)(3) authorizes outright dismissal or merely a stay. *See United States v. $103,387.27 in U.S. Currency*, 863 F.2d at 558 n. 6, 559 n. 7; *Heil v. Morrison Knudsen Corp.*, 863 F.2d 546, 548–49 (7th Cir.1988) ("This is big-time commercial litigation, with experienced lawyers on both sides, and even less than elsewhere are we here inclined to allow a party to urge reversal of the district judge on grounds not presented to him.").

---

12. There is a growing body of federal authority which holds, under a variety of rationales, that a district court does not abuse its discretion where it dismisses or stays a single facet of an insurance dispute in favor of a more comprehensive suit pending elsewhere. *See, e.g., General Reinsurance Corp. v. Ciba–Geigy Corp.*, 853 F.2d 78, 80–82 (2d Cir.1988); *Transamerica Occidental Life Ins. Co. v. Digregorio*, 811 F.2d 1249, 1253–55 (9th Cir.1987); *Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 414–15 (2d Cir.1986); *Liberty Mut. Ins. Co. v. Foremost–McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir.1985). Although these cases do not address the issue of Illinois law involved here, they are highly instructive with respect to the advantages of a single, comprehensive reso-

lution of an insurance dispute involving multiple carriers, multiple time periods and multiple "layers" of insurance coverage.

13. *Compare People ex rel. Dep't of Pub. Aid v. Santos*, 92 Ill.2d 120, 65 Ill.Dec. 21, 440 N.E.2d 876 (1982) (reversing trial court's dismissal and instructing court to stay action pending outcome of related suit) *with Sweeney v. Citicorp Person–to–Person Fin. Center, Inc.*, 137 Ill.App.3d 1023, 1026–28, 92 Ill.Dec. 612, 614–15, 485 N.E.2d 423, 425–26 (1st Dist.1985) (finding no abuse of discretion where circuit court dismissed action rather than merely staying suit); *Schiller v. Packaging Store, Inc.*, 690 F.Supp. 711, 714–15 n. 7 (N.D.Ill.1988).

## III.

For the foregoing reasons, the district court's judgment is

AFFIRMED.